STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

STATE OF MAINE

CUMBERLAND, ss.

2003 JAN 17 P 12: 31

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-02-338

RAC-CUM - 1/17/2003

FLEET NATIONAL BANK,

Plaintiff

v.

MICHAEL A. LIBERTY, GAIL M. LIBERTY,
CLW ASSOCIATES I, CLW ASSOCIATES II,
& DAVID R. COPE,

Defendants

DONALD L. GARBRECHT
LAW LIBRARY

FEB 12 2003

ORDER

Before this court is the Plaintiff's Motion for Prejudgment Attachment and Trustee Process against Defendant Michael A. Liberty and Defendant Gail M. Liberty. On November 26, 2002, this court heard arguments and reviewed affidavits concerning the above matter but did not review a complete record concerning appointment of a receiver, which will therefore not be addressed.

## FACTS

The underlying issue can be summarized as one in which the Defendants, with the exception of Gail M. Liberty, borrowed funds from the Plaintiff, their agreements in the form of promissory notes, and then failed to honor their obligations. On January 18, 1991, Defendants Michael A. Liberty and David R. Cope, acting as general partners of CLW Associates I and CLW Associates II,

signed in the presence of a witness a "time note" promising to pay Fleet Bank of Maine $350,000 with the maturity date set at January 18, 1994. (Ex. A-1 and A-2.) Defendant Michael A. Liberty also acted as guarantor of that note in the event of default. *Id.* On July 23, 1991, Defendant Michael A. Liberty signed in the presence of a witness a "time note" promising to pay Fleet Bank of Maine $100,000 with the maturity date set at July 23, 1996. (Ex. C-1 and C-2.) On June 26, 1992, Michael A. Liberty, in an individual capacity and as a general partner of Union Station Plaza Associates, signed in the presence of a witness a "commercial note" promising to pay Fleet National Bank[1] $554,000 with the maturity date set at June 30, 1997. (Ex. F-1 through F-3.) The Defendants defaulted on the abovementioned notes, failing to repay any funds to the Plaintiff Fleet National Bank. Hence, on July 12, 2002, the Plaintiff filed a Complaint seeking to recover principal, interest, and charges owed on the defaulted notes along with attorney's fees and costs of court.

## DISCUSSION

To grant the Plaintiff's motion for attachment this court has to find "that it is *more likely than not* that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the aggregate sum of the attachment and any liability insurance, bond, or other security, and any property or credits attached by other writ of attachment or by trustee process shown by the defendant to be available to satisfy the judgment." M.R.Civ.P. 4A(c) (emphasis added). The granting of trustee process must also be based on a

---

[1] Fleet National Bank is a successor in interest to Fleet Bank of Maine.

similar finding by the court.[2] The standard of review for "an order for attachment or trustee process [is] an abuse of discretion or clear error." Liberty v. Liberty, 2001 ME 19, ¶11, 769 A.2d 845, 847 (citing Boisvert v. Boisvert, 672 A.2d 96, 97 (Me. 1996)). In addition, the Law Court has held that "[o]rders for attachment or trustee process are immediately appealable as exceptions to the final judgment rule." Id. ¶10.

At this point in the proceedings, the Plaintiff has failed to present evidence that it is more likely than not that the Plaintiff will recover any judgment against Defendant Gail M. Liberty. Nevertheless, the question remains to what extent it is likely that the Plaintiff will recover judgment against Defendant Michael A. Liberty. The affidavit of Abigail M. Bees, a vice president at Plaintiff Fleet National Bank, supports the Plaintiff's claims that Defendant Michael A. Liberty had breached his contractual obligations. In his Answer docketed August 15, 2002, Defendant Michael A. Liberty admits that the disputed notes were executed and delivered, that the Plaintiff had advanced funds, and that no payments were made as required by the terms of the notes.

The Defendants, however, have asserted affirmative defenses. The Defendants persuasively point out that the abovementioned notes are negotiable instruments. *See* 11 M.R.S.A, 3-1104(1) (1995). The Defendants further contend that these notes, which are payable at a definite time, are governed by the statute of limitations set forth in 11 M.R.S.A. § 3-1118(1), which states:

---

[2] To grant the Plaintiff's motion for trustee process this court must find "that it is *more likely than not* that the plaintiff will recover judgment, including interest and costs, in an aggregate sum equal to or greater than the amount of the trustee process and any insurance, bond, or other security, and any property or credits attached by writ of attachment or by other trustee process shown by the defendant to be available to satisfy the judgment." M.R.Civ.P. 4B(c) (emphasis added).

Except as provided in subsection (5), an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within 6 years after the due date or dates stated in the note or, if a due date is accelerated, within 6 years after the accelerated due date.

11 M.R.S.A. 3-1118(1) (1995).

In an affidavit, Defendant Michael A. Liberty stated that the Plaintiff accelerated payment on the notes, or certain notes matured by their terms, prior to July 1, 1996, which was more than six years before the Plaintiff filed its Complaint. In other words, the Defendants urge this court to accept that the Plaintiff's claims will fail because the statute of limitations has run pursuant to 11 M.R.S.A. 3-1118(1). *See also* Premier Capital, Inc. v. Doucette, 2002 ME 83, ¶7, 797 A.2d 32, 34.

The problem with the Defendants' argument is that it does not consider the law that was in effect when the notes were issued. The Maine Legislature enacted Revised Article 3 of the Uniform Commercial Code (Article 3-A) concerning negotiable instruments in 1993, which was after the notes in question were issued. *See* P.L. 1993, ch. 293. Hence, Title 11 M.R.S.A. 3-1118(1) was not operative at the time the parties contracted. In fact, the pre-1993 U.C.C. Article 3 on Commercial paper did not have a section dealing with statute of limitations, but did have a section which stated when a cause of action accrued on a negotiable instrument. 11 M.R.S.A. §3-122 (1964 & Supp. 1992), repealed by P.L. 1993, ch. 293, Sec. A-1. Therefore, another statute of limitations may control. At the time the parties executed the notes, a twenty-year statute of limitations applied to "personal actions on contracts or liabilities under seal, *promissory notes signed in the presence of an attesting witness* or on the bills, notes or other evidences

4

of debt issued by a bank." 14 M.R.S.A. §751 (1980) (emphasis added). This statute is still in effect today. *Id.*

This court first needs to ascertain whether Title 11 M.R.S.A. 3-1118(1) applies to the present situation. The Law Court has held that the legislative purpose determines whether a statute should be applied retrospectively. <u>Sinclair v. Sinclair</u>, 654 A.2d 438, 440 (Me. 1995). Moreover, a "statute [applied retroactively] exceeds constitutional limitations if its effect on contractual rights is both substantial and unwarranted by legitimate state interests." *Id.*

Reviewing the history of Maine's adoption of Article 3-A is not helpful in determining whether the Legislature expressly or implicitly intended Title 11 M.R.S.A. 3-1118(1) to be applied retroactively.[3] The same can be said for reviewing the official U.C.C. comment pertaining to the applicable statute of limitations.[4] Case law is more helpful insofar as the Law Court has refused to

---

[3] For example, the recorded legislative intent is as follows:

> This Act is the Maine enactment of the Uniform Commercial Code, Article 3 as revised by the National Conference of Commissioners on Uniform State Laws. The text of that uniform act has been changed to conform to Maine statutory conventions and the article is enacted as Article 3-A. Unless otherwise noted in a Maine comment, the changes are technical in nature and it is the intent of the Legislature that this Act be interpreted as substantively the same as the revised Article 3 of the uniform act.

P.L. 1993, ch. 293, Sec. A-3

[4] The U.C.C. Comment for Title 11 M.R.S.A. §3-1118 states in part:

> Section 3-118 [section 3-1118] differs from former Section 3-122, which states when a cause of action accrues on an instrument. Section 3-118 [section 3-1118] does not define when a cause of action accrues. Accrual of a cause of action is stated in other sections of Article 3 [Article 3-A] such as those that state the various obligations of parties to an instrument. The only purpose of Section 3-118 [section 3-1118] is to define the time within which an action to enforce an obligation, duty, or right arising under Article 3 [Article 3-A] must be commenced. Section 3-118 [section 3-1118] does not attempt to state all rules with respect to a statute of limitations. For example, the circumstances under which the running of a limitations period may be tolled is left to other law pursuant to Section 1-103.

L.D. 381, § 3-1118 (116th Legis. 1993) (Uniform Commercial Code Comment 1).

apply a statute of limitation for medical malpractice retroactively. <u>Miller v. Fallon</u>, 134 Me. 145, 153, 183 A. 416, 419 (1936). Other jurisdictions have come to the same conclusion with regards to negotiable instruments. <u>Hill v. Mayall</u>, 886 P.2d 1188, 1190-91 (Wyo. 1994). When this court considers the substantial interference with the terms of the parties' contracts, as a matter of fairness and commercial reasonableness it becomes clear that this court cannot retroactively apply Title 11 M.R.S.A. 3-1118(1) to the present case. *See* ME CONST. art. 1 § 11 ("The Legislature shall pass no . . . law impairing the obligation of contracts . . . ."). Title 14 M.R.S.A. §751 is applicable because it was in effect at the time the notes were executed and it specifically addresses "promissory notes signed in the presence of an attesting witness." 14 M.R.S.A. §751 (1980); *see also* <u>Portsmouth Savings Bank v. Pearson</u>, CV-92-235 (Me. Super. Ct., Yor. Cty., Jan. 20, 1993) (Fritzsche J.). Consequentially, in the present case a twenty-year statute of limitations applies, which means the Plaintiff's claims will not be barred. *See* 14 M.R.S.A. §751 (1980).

WHEREFORE, for reasons stated above this court shall **DENY** the Motion for Attachment and Trustee Process without prejudice regarding Defendant Gail M. Liberty. Furthermore, this court shall **GRANT** the Motion for Attachment and Trustee Process regarding Defendant Michael A. Liberty. This court will authorize a total of $1,004,000.00 for attachment or trustee process, a sum which

---

In addition, the Prefatory Note to Revised Article 3 (Negotiable Instruments) by the National Conference of Commissioners on Uniform State Laws and the American Law Institute" states the following about statute of limitations: "Sections 3-118 [11 M.R.S.A. § 3-1118] and 4-111 include statutory periods of limitations which will make the law uniform rather than leaving the topic to widely varying state laws. " 2 U.L.A. 11 (1991) (quoted in Title 11 M.R.S.A., Vol. 4, p. 425)

is the total value of the three notes excluding interest or other charges, based on the Plaintiff's showing that it is more likely than not that the Plaintiff will recover a judgment in that amount.

Dated: January 17, 2003

Roland A. Cole
Justice, Superior Court

SUSAN SZWED ESQ FOR PLAINTIFF-FLEET NATIONAL BANK
PO BOX 9715
PORTLAND ME 04101

GEORGE MARCUS ESQ FOR GAIL LIBERTY, CLW ASSOC. I & II and DAVID COPE
100 MIDDLE STREET EAST TOWER
PORTLAND ME 04101


NICHOLAS WALSH ESQ. FOR PLAINTIFF-FLEET NATIONAL BAL
111 COMMERCIAL STREET
PORTALND ME 04101-4719


CV02-338