GEORGE D. COUPOUNAS *vs.* EDWARD C. MADDEN & another.[1]

Suffolk.    September 11, 1987. — November 12, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Practice, Civil,* Instructions to jury, Objections to jury instructions. *Attorney at Law,* Transaction with client. *Negotiable Instruments,* Defenses. *Uniform Commercial Code,* Defenses. *Interest. Usury.*

At the trial of a civil action, no error appeared in the judge's denial of requests for certain jury instructions which, variously, raised issues as to facts not in dispute; were, in effect, requests to direct the jury to find certain facts that were actually disputed; and misstated the law. [127-129]

Error in the charge to the jury at a civil trial was not raised with sufficient precision and clarity before the trial judge for the issue to be considered on appeal. [129-130]

In a civil action seeking recovery on promissory notes, the judge's award of interest on the face amount of the notes, which face amount incorporated previously accrued interest, did not constitute compounding interest. [131]

In a civil action seeking recovery on promissory notes, a judgment in the face amount of the notes, which face amount incorporated previously accrued interest, was vacated to the extent that the face amount incorporated compound interest, which the defendant had not expressly agreed to pay. [131-132]

CIVIL ACTION commenced in the Superior Court on March 28, 1978.

The case was tried before *Cortland A. Mathers,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Daniel Briansky* (*Paul William Garber* with him) for the defendant.

*John A. Gledhill, Jr.,* for the plaintiff.

---

[1] The complaint against Allston Industries, Inc., was dismissed by stipulation.

HENNESSEY, C.J. The defendant Madden appeals from a judgment in favor of the plaintiff Coupounas on promissory notes executed by Madden in payment of professional fees owed Coupounas by Madden and by two corporations controlled by Madden.

Prior to 1970, Coupounas, an attorney and certified public accountant, rendered certain professional services to Madden and to his corporations. In November, 1970, and subsequent months, Coupounas sent invoices for his fees to Madden and to each corporation. These bills were not paid. Coupounas testified that, at some point in 1972, he had discussed with Madden the matter of the unpaid invoices, and that Madden had agreed to pay interest on the balances at the rate of 1½% per month. Madden denied having made such an agreement. It is undisputed that Coupounas's invoices for the month of October, 1972, included, in addition to the principal balance of the unpaid fees an amount representing accrued interest, at the rate of 1½% per month, from the time each fee originally was invoiced through October 1, 1972. Subsequently, Coupounas continued to send monthly invoices to Madden and to his corporations, each month adding an additional interest charge of 1½% of the previous month's outstanding balance. In this fashion, by calculating each month's interest accruals using as a base the previous month's outstanding balances, Coupounas compounded interest by charging not only interest on principal but also interest on interest previously accrued.

This continued until March, 1973, when Madden again sought Coupounas's professional services. Coupounas refused to perform any further services until Madden made some arrangement to pay for the previous ones. Eventually, Madden agreed to execute the promissory notes on which Coupounas sued below. Coupounas prepared three promissory notes, one each for the balances due respectively from Madden personally, and from each of his corporations. Each note was dated March 31, 1973, payable thirty days thereafter, and executed in a face amount representing the balance due from the particular debtor, including simple and compound interest through that date. Madden executed each note in his individual capacity.

When introduced in evidence at trial, each note bore the words, "with interest at 1½% per month." Madden denied that this language appeared on the notes at the time he signed them.

Madden did not pay the notes when they became due, and Coupounas brought an action on them in the Superior Court. The jury returned a verdict for Coupounas in the face value of the notes, and the judge added interest at 1½% per month from the date the notes were executed, to the date of the judgment. Madden appealed, and we took the case on our own motion.

On appeal, Madden contends that the judge erred in denying his requests for certain jury instructions, and in denying his motion for a new trial. At trial, Madden's counsel did not object to the trial judge's denial of certain of his requests for instructions, and so the propriety of the judge's action as regards these is not before us. Mass. R. Civ. P. 46, 365 Mass. 811 (1974). Those requests as to which Madden's rights were saved were properly denied for the reasons that follow.

Madden requested an instruction that Coupounas had compounded interest on the invoices and had incorporated such compound interest in the face amount of the notes. We see no error in denying this request. Coupounas's own testimony established that such compounding had occurred and that the face amount of the notes included compound interest. As there was no factual dispute, there was no function for the jury to perform on this issue and the judge was correct not to submit it to them.

Madden requested that the jury be instructed that, "[i]f you find a fiduciary relationship existed between the plaintiff and defendant as a result of their attorney-client relationship at the time of the defendant executing said three (3) promissory notes, the plaintiff had a duty to inform the defendant that (a) he should obtain independent legal advice before signing the notes; (b) he was to alter the notes by inserting an interest rate of 1½% per month; and (c) he would be assuming individual liability for corporate obligations, some of which were incurred for services never fully rendered by the plaintiff."

The judge's refusal to give this instruction was not error, as the requested instruction was infirm in a number of particulars. First, there was no dispute as to the underlying facts. Coupounas did not claim to have made any of the indicated disclosures. There was therefore no function for the jury to perform. Secondly, as to the first part of this instruction, Coupounas had no duty to advise Madden to seek independent legal counsel before signing the notes, or that by signing he would be assuming individual liability for corporate obligations. There was no unfairness or overreaching by Coupounas. Madden, an experienced businessman, willingly signed the notes in order to obtain further services from Coupounas. Coupounas was not obligated to advise Madden of the consequences of his signing the notes in his individual capacity or to advise him to seek independent legal counsel before so signing. See *Widett & Widett* v. *Snyder,* 392 Mass. 778, 782-783 (1984). As to the requests that the jury be instructed that Coupounas had altered the notes to include a provision for interest, and that some of the underlying debts "were incurred for services never fully rendered" by Coupounas, these were requests that the jury be directed that these facts had been established. On the contrary, Coupounas disputed these issues. He testified that the notes bore interest when Madden executed them, and that he had performed all the services for which he had charged Madden.

Madden also requested that the jury be instructed that, "[i]n the circumstances of this case where the integrity of the three (3) notes is called in question because plaintiff billed the defendant for some services he did not render to the defendant, but for which he gave him a bill, the plaintiff should not recover anything." Again, to have given this instruction would have been to direct a finding that "plaintiff billed the defendant for some services he did not render," a disputed issue. Moreover, even if such overcharging had been established, it does not follow that "the plaintiff should not recover anything," since he still might be entitled to recover the reasonable value of the services actually rendered. See, e.g., *Young* v. *Southgate Dev. Corp.,* 379 Mass. 523 (1980) (attorney's misconduct

does not bar recovery of reasonable value of services rendered prior to such misconduct). Finally, the phrasing of the instruction in terms of the "integrity" of the notes being "called into question" misstates the applicable burden of proof. Coupounas established his prima facie case by undisputed evidence that Madden had signed the notes. It then was incumbent on Madden to prove any defense by a preponderance of the evidence. G. L. c. 106, § 3-307 (2) (1986 ed.), and comment 2 to § 3-307 of the Uniform Commercial Code, 2 U.L.A. (Master ed. 1977). To establish a defense, Madden had to do more than "call into question" the "integrity" of the notes, whatever that ambiguous, if not meaningless, language connotes. For any of these reasons, the judge below was correct to deny the request for this instruction.

Much the same reasoning applies to Madden's request that the jury be instructed that, "[i]f you find that there exist circumstances and conditions brought about by the plaintiff in the course of conduct by him to the defendant which would cause the integrity of the promissory notes to be questionable, then the promissory notes are void and the plaintiff should recover nothing." Again, this phrasing is misleading at best. That the "integrity" of the note is "questionable" is not a sufficient showing to carry Madden's burden of proof on a defense. See G. L. c. 106, § 3-307 (2), and comment 2 to § 3-307, *supra*. What has been said above regarding recovery in quantum meruit also applies here, as well as to Madden's request that the jury be instructed that, "[i]f you find that the plaintiff breached his fiduciary duties to the defendant, he should recover nothing."

Madden contends that the judge erred in denying his motion for a new trial. Three grounds were put forth below in support of the motion, and are renewed on appeal.

Madden argues that the judge erred in instructing the jury to disregard the issue of interest to be added to the face amount of the notes, thus invading the province of the jury by ruling as a matter of law that interest on the notes should be 1½% per month. The judge removed from the jury's consideration the issue of whether the notes bore the words "with interest at

1½% per month" when Madden signed them. Apparently deciding that the notes did include this language, the judge added to the jury's verdict awarding Coupounas the face amount of the notes an amount representing accrued interest at 1½% per month from the date of execution of the notes to the date of judgment. While it was error for the judge not to submit this disputed issue to the jury, Madden's counsel did not "point out to the trial judge the alleged errors in the charge with sufficient precision and clarity to enable him to understand, let alone correct, the supposed error."[2] *Thalin* v. *Friden Calculating Mach. Co.,* 338 Mass. 67, 72 (1958). As such, he may not complain of this error on appeal.

Madden contends that the verdict and judgment are contrary to law in that the interest charged him exceeded 20% per annum and so was usurious and uncollectible. This contention is not persuasive. It can be argued that the usury statute, G. L. c. 271, § 49 (1986 ed.), does not apply to this situation as it by its terms applies only to a "loan of money or other property," and so does not obtain as to a note securing payment of professional bills. We do not, however, decide this question as it is clear that the rate charged by Coupounas does not exceed 20% per annum. As will be seen, *infra,* it is incorrect to combine the periods before and after the notes were executed to calculate an effective rate of interest over the combined period. Because

---

[2] Madden's counsel objected to the charge as follows:

COUNSEL: "Also, I think I would, with all due respect, I think I would ask you again to clarify the last remarks you made concerning interest; that it really isn't within — that they shouldn't be concerned with interest. I understand what you're trying to say; the difficulty here is interest plays a very integral part of what they have to come up with, in terms of numbers, that if, in fact, they determine that interest should be applied, should not be applied — not at the end of the verdict, but to come up with that number — then they should certainly take that into consideration."

THE JUDGE: "Well, I think that they understand what I'm talking about; I'm talking about any additional interest to whatever sum they —"

COUNSEL: "Well, I think I know what you're talking about; I'm not so sure that they know. But, anyway, you'll note my objection to your refusal to give it?"

THE JUDGE: "Okay; sure."

COUNSEL: "Thank you."

the judgment is to be altered to eliminate the compound interest incorporated into the face amount of the notes, and the notes are to bear simple interest at the rate of 1½% per month from the date of their execution, it is clear that the rate will not exceed 20%.

Finally, Madden argues that the judgment is contrary to the law in so far as the judge awarded interest on the jury's verdict. He says that by awarding interest on the face amount of the notes, where the notes themselves incorporated previously accrued interest, the court awarded "interest on interest," or compound interest, contrary to the laws of Massachusetts. See, e.g., *Shapiro* v. *Bailen,* 293 Mass. 121, 123-124 (1936); *Lewin* v. *Folsom,* 171 Mass. 188, 192 (1898). We do not agree. "We think the term 'compound interest', as it is commonly understood, applies to an agreement whereby interest thereafter to accrue automatically bears interest. Such agreements the law has refused to countenance principally for the reason that an improvident debtor is not likely to realize the extent to which the interest will accumulate. Though the term 'compound interest' may apply in certain other circumstances, we think it does not apply where interest has already fallen due and has become a debt which, like any other debt, may either be paid in cash or reloaned to the debtor under a new agreement that it shall bear interest. Such an agreement is not a snare which is likely to entrap the unwary, for the borrower cannot fail to realize the exact extent of his obligation." *Household Fin. Corp.* v. *Goldring,* 263 A.D. 524, 527 (N.Y. 1942). Where a debt includes accrued interest, "if a new note is given for the interest, it is thereby converted into capital, and may rightfully be given with interest." *Ferry* v. *Ferry,* 2 Cush. 92, 99 (1848). *Wilcox* v. *Howland,* 23 Pick. 167 (1839). The judge's awarding of interest on the face amount of the notes, which face amount incorporated previously accrued interest, does not constitute compounding interest.

We reach a different conclusion as to the interest which was incorporated into the face amount of the notes. The undisputed evidence at trial established that Coupounas calculated the face amount of the notes by compounding interest on the outstanding

balances of the debts owed him by Madden. The inappropriate-ness of these calculations was raised seasonably by Madden during the trial and was renewed by Madden's motion for a new trial, after the judge ordered the entry of judgment. We agree with Madden that the verdict and the judgment therein must be vacated to the extent that they incorporate compound interest. While Coupounas testified that Madden agreed to pay interest at 1½% per month on the unpaid invoices, there was no evidence that he agreed to pay interest at a compounded rate. In the absence of such express agreement by Madden, Coupounas may not compound interest. See, e.g., *Shapiro* v. *Bailen, supra* at 123-124; *Tisbury* v. *Vineyard Haven Water Co.*, 193 Mass. 196, 198 (1906); *Von Hemert* v. *Porter*, 11 Met. 210, 218 (1846).

We remand to the judge below to recalculate the total debt owed to Coupounas by Madden, including simple interest at 1½% per month from the time each fee originally was invoiced through March 31, 1973, the date the three notes were executed; to reduce the jury verdict to that amount; and to award interest at 1½% per month on the verdict from the date of the notes to the date of the new judgment.

*So ordered.*