2002 ME 83

**PREMIER CAPITAL, INC.**

v.

**David DOUCETTE et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: March 26, 2002.

Decided: May 22, 2002.

Randall T. Pratt, Esq., Portsmouth, NH, for plaintiff.

Mark A. Kearns, Esq., Wells, for defendants.

Panel: SAUFLEY, C.J., CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] David and Cynthia Doucette appeal from the judgment entered in the Superior Court (York County, *Brennan, J.*) awarding Premier Capital, Inc. the sum of $76,465.44, exclusive of attorney fees and costs, on a claim for failure to pay a promissory note. The Doucettes contend that Premier Capital's claim is barred by the statute of limitations, that there was an accord and satisfaction, and that there is insufficient evidence to support the judgment. We affirm the Superior Court's conclusion that the claim is not time barred and that there was no accord and satisfaction, but we vacate the judgment and remand the case to the Superior Court because there is no competent evidence in the record to support the amount of interest included in the damage award.

## I. FACTS

[¶ 2] On July 11, 1986, David and Cynthia Doucette issued a promissory note (Note) to First NH Bank, Granite State National Bank (First NH), in the amount of $140,000. The Doucettes borrowed this amount in order to purchase a multi-family residence in Berwick and to discharge a preexisting note and mortgage on a single-family residence they owned. The Note was secured by a first mortgage on the multi-family and single-family residences.

[¶ 3] From July 1986 until June 1990, the Doucettes made timely payments on their debt. In July 1990, however, they began having difficulty meeting their monthly payments. From July 1990 through July 1991, the Doucettes continued to make monthly payments that were substantially lower than the payments required by the terms of the Note. In July 1991, there was $135,261.79 outstanding on the Note.

[¶ 4] Based upon communications David Doucette had with representatives of First NH in 1991, the Doucettes claim that they reached a workout agreement with First NH regarding the repayment of the Note whereby the single-family and multi-family residences were to be sold, and the Doucettes and David Doucette's father, Robert Doucette, were to sign a new promissory note for $47,500, secured by David Doucette's commercial garage. The single-

family and multi-family residences were subsequently sold with the proceeds being applied, in part, toward the balance owed on the Note. In December 1991, the Doucettes and Robert Doucette issued the $47,500 note, $40,000 of which was applied to the balance owed on the Note.[1]

[¶ 5] In May and August 1992, Gary J. Barr, a loan officer with First NH, met with the Doucettes to discuss the Doucettes' financial position with First NH. These meetings were memorialized in credit memos written by Loan Officer Barr which indicate that the Doucettes then had three outstanding loans with First NH, including the Note at issue in this case. By letter to the Doucettes dated March 16, 1993, First NH accelerated payment on the $140,000 Note and demanded payment totalling $33,987.11 consisting of $6,640.96 in principal, $23,636.23 in accrued interest, and $3,709.92 in late fees. Soon thereafter, First NH assigned the Note to Amresco New Hampshire, Inc., which subsequently assigned the Note to Amresco New Hampshire, L.P., which ultimately assigned the Note to Premier Capital. First NH assigned the remaining loans and mortgages it had with the Doucettes to Hilco, Inc.

[¶ 6] On July 22, 1998, Premier Capital filed its complaint against the Doucettes seeking all sums due under the Note. Following a jury-waived trial, the court found that the Doucettes "failed to establish the defense of accord and satisfaction by a fair preponderance of the evidence," and it found "not without some difficulty . . . that Premier's accounting with respect to the

amounts currently due under the [N]ote is more likely than not accurate." The trial court concluded that "the Doucettes owe[d] Premier a total of $76,465.44 as of March 1, 2001." Included in this total was interest in the amount of $23,965.47 accrued as of August 18, 1993. It is from this judgment that the Doucettes timely appeal.

## II. DISCUSSION

### A. Statute of Limitations

■ [¶ 7] Although the statute of limitations was pled by the Doucettes as an affirmative defense, it was not expressly addressed in the court's judgment. "Generally, a cause of action accrues when a party suffers a judicially cognizable injury."[2] The Legislature has established that the statute of limitations for negotiable instruments is six years. 11 M.R.S.A. § 3–1118 (1995). Section 3–1118 specifically provides that an action must be commenced within six years of the acceleration of a note.[3] 11 M.R.S.A. § 3–1118(1). The facts indicate that the Note was accelerated by a letter dated March 16, 1993, and the action was commenced on July 22, 1998. Thus, the action was commenced within the applicable statute of limitations.

### B. Accord and Satisfaction

[¶ 8] The Doucettes contend that an accord and satisfaction arose from the loan workout agreement discussed in 1991 whereby the original Note was satisfied from the proceeds generated from the sales of the single-family and multi-family residences and the new $47,500 loan co-

---

1. It appears that the balance was placed in an escrow account.

2. *Dunelawn Owners' Ass'n v. Gendreau,* 2000 ME 94, ¶ 11, 750 A.2d 591, 595.

3. The statute provides in pertinent part:

Except as provided in subsection (5), an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within 6 years after the due date or dates stated in the note or, if a due date is accelerated, within 6 years after the accelerated due date.
11 M.R.S.A. § 3–1118(1).

signed by Robert Doucette. Premier Capital asserts that a formal workout agreement was never reached between the Doucettes and First NH and that the outstanding balance due on the Note was never paid.

■ [¶ 9] "Accord and satisfaction is an affirmative defense, M.R. Civ. P. 8(c), and the party asserting an accord and satisfaction has the burden of showing that an accord and satisfaction has occurred by a preponderance of the evidence."[4] The existence of an accord and satisfaction is a question of fact unless it is evidenced by a clear and unambiguous writing.[5] We will not disturb the trial court's factual findings unless they are clearly erroneous.[6]

■ [¶ 10] Contrary to the Doucettes' assertions, there is competent evidence in the record that supports the trial court's conclusion that "the Doucettes have failed to establish the defense of accord and satisfaction by a fair preponderance of the evidence." Loan Officer Barr testified that although a workout arrangement was proposed, it was never formalized, and the Doucettes never paid the deficiency. Lawrence R. Guay, a former Vice–President and commercial loan officer with First NH, testified that "[t]here was no written agreement or verbal [agreement]" that First NH would waive the outstanding principal and/or interest balance from the Note. Internal bank documents prepared by Barr and Guay also indicate that First NH and the Doucettes were negotiating a workout agreement but that an agreement was never finalized. In light of this evidence, the trial court's conclusion that the Doucettes failed to establish an accord and satisfaction by a fair preponderance of the evidence was not clearly erroneous.

### C. Sufficiency of the Evidence

■ [¶ 11] The Doucettes assert that there was insufficient evidence in the record to support the court's findings regarding the amount due to Premier Capital under the Note. Premier Capital argues that the award of $76,465.44 accurately reflects its damages and that the evidence supports such an award. Our review of the trial court's factual findings is limited to a review of the record to determine whether competent evidence exists to support the trial court's factual conclusions.[7] Competent evidence is "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion."[8]

#### 1. Interest Accrued as of August 1993

[¶ 12] Premier Capital submitted several exhibits that contain information regarding the amount of principal, interest, and late fees due in the period following the refinancing and pay down of the obligation by the Doucettes in 1991 and 1992. They establish that $6,640.96 was owed as principal, and $3734 was owed as late fees as of August 18, 1993. The evidence is in conflict, however, concerning the amount of outstanding interest due as of August 1993.

4. *E.S. Herrick Co. v. Maine Wild Blueberry Co.,* 670 A.2d 944, 946 (Me.1996).

5. "Accord and satisfaction may exist as a matter of law if an amount is tendered on a clear and unambiguous written condition that it be accepted in full settlement of all claims pending between the parties and the claimant accepts payments of the amount tendered." *Id.* at 946 (quotations omitted).

6. *McGraw v. S.D. Warren Co.,* 656 A.2d 1222, 1224 (Me.1995).

7. *Stickney v. City of Saco,* 2001 ME 69, ¶ 13, 770 A.2d 592, 600.

8. *Shone v. Maine Employment Sec. Comm'n,* 441 A.2d 282, 284 (Me.1982).

[¶ 13] An accounting of the loan prepared by Premier Capital (Court Exhibit # 1) reported that as of August 12, 1993, the total balance due for principal, interest, and late fees was $22,162.03. This exhibit reflects that the rate of interest employed by Premier Capital varied as frequently as month to month and included the monthly compounding of interest. The monthly adjustment of the rate of interest, however, is contrary to the terms of the Note which called for a single annual adjustment of the rate of interest in July of each year. A separate accounting introduced by Premier Capital (Telephone Conference Exhibit # 1) showed that, as of August 18, 1993, the total outstanding amount for principal, interest, and late fees was $34,340.43. None of Premier Capital's witnesses professed to have personal knowledge as to the amount of interest that had accrued and remained unpaid as of August 1993. The court ultimately relied upon Telephone Conference Exhibit # 1 in arriving at the amount of damages awarded in the judgment.[9]

[¶ 14] Telephone Conference Exhibit # 1 reflected the following amounts outstanding as of August 18, 1993: principal in the amount of $6,640.96, late fees in the amount of $3734, and accrued interest in the amount of $23,965.47. The only information contained in the exhibit that explains how the accrued interest was determined is a photocopy of a handwritten note dated November 8, 2000, written by Loan Officer Barr and addressed to "Randy." The handwritten note states in its entirety: "According to an assistant in our workout department, the $23,965.47 transaction done on August 18, 1993, represents the interest balance that was cleared from our books when the loan was sold to Hilco." The substance of the handwritten note was not the subject of testimony, nor was the identity of the "assistant" ever revealed to the court.

[¶ 15] The trial court erred in relying upon this evidence as the basis for determining that Premier Capital was entitled to $23,965.47 of accrued interest as of August 18, 1993. The handwritten note states that the Note was sold to Hilco, Inc. It is undisputed, however, that although First NH assigned other notes and mortgages it held from the Doucettes to Hilco, Inc., the $140,000 Note was never sold to Hilco, Inc. The interest balance of $23,965.47 that First NH cleared from its books on August 18, 1993, upon the sale of a note to Hilco, Inc., cannot be competent evidence of the interest balance, if any, associated with the Note which is the subject of this action. Because there is no competent evidence in the record regarding the amount of interest, if any, that was outstanding as of August 18, 1993, it was clearly erroneous for the trial court to include the $23,965.47 of interest in the judgment.

2. Interest Accrued Subsequent to August 1993

[¶ 16] The trial court's determination of interest accruing subsequent to August 18, 1993, reflects that it compounded interest on a monthly basis. The Doucettes contend that the Note does not authorize the compounding of interest in arriving at a

---

9. At the end of the second and final day of trial, the court stated that in order to decide the case it would need to receive "the bank's calculations, if they exist." Subsequently, Premier Capital submitted additional exhibits, one of which was Telephone Conference Exhibit # 1, that were received in evidence following a telephone conference between the court and counsel. The court's Judgment reflects that the trial justice relied upon calculations presented in Telephone Conference Exhibit # 1 in determining the amount of damages to award Premier Capital.

determination of damages in this case. We agree.

■■■■ [¶ 17] As a general rule, "compound interest cannot be recovered where the parties do not expressly promise to pay it." [10] The Note provided for an initial rate of interest of 11.50% per annum, subject to annual rate adjustments, and further provided that upon maturity, "whether by demand, acceleration or otherwise," the entire principal balance together with accrued interest "bear[s] interest at the same rate of interest set forth hereinabove." This provision authorizes the accrual of interest upon any principal and accrued interest that is owing as of the date the Note reaches maturity. It cannot be construed as authorizing the compounding of interest thereafter, and the record otherwise provides no support for imputing the same.[11]

## III. CONCLUSION

[¶ 18] We affirm the trial court's findings that the Doucettes failed to establish the defense of accord and satisfaction by a preponderance of the evidence and that, as of August 18, 1993, the amount of outstanding principal and late fees was $6,640.96 and $3734, respectively. In addition, we affirm the trial court's implicit finding that this action is not barred by operation of the applicable statute of limi-

tations. We vacate, however, (1) the award of any interest accrued as of August 18, 1993, because it is not supported by competent evidence in the record, and (2) the award of interest subsequent to August 18, 1993, because it was premised, in part, upon the amount of interest the court determined was due as of August 18, 1993, as well as upon subsequent compounding of interest.

[¶ 19] In accordance with the express terms of the note, the principal amount due of $6,640.96 as of August 18, 1993, bears interest at the annual rate of interest provided for in the Note as adjusted in July of each year. The case is remanded to the trial court for a redetermination of interest on the outstanding principal balance of $6,640.96 from August 18, 1993, forward. According to the terms of the Note, the late fees of $3734 are not subject to interest, but should be included in the final determination of damages. The trial court received evidence as to the annual adjustments to the rate of interest for the period July 1993 through July 2000; however, in order to determine the interest due on the outstanding balance of $6,640.96, the court will be required to receive additional evidence to permit it to determine the annual adjustments to the rate of interest up to the date of the judgment. In addition, the calculation of interest should be based upon simple interest.

---

10. *Bradley v. Merrill*, 91 Me. 340, 346, 40 A. 132, 133 (1898); *see also Coupounas v. Madden*, 401 Mass. 125, 514 N.E.2d 1316, 1322 (1987).

11. The only support offered by Premier Capital in its brief on appeal for the monthly compounding of interest is its statement that "[t]he Note allows the capitalization of interest." The only direct reference to this issue in the trial record is the following testimony from Loan Officer Barr who, when asked to

compare Court Exhibit # 1 with other evidence presented in an attempt to explain the discrepancies regarding the amount of unpaid interest, responded: "I'm still trying to figure out—it looks like each interest payment, or each interest accrual was added onto the principle [*sic*] balance, is that correct? No. I don't understand how—[.]" It appears from this testimony that Loan Officer Barr could not explain why interest was added to the principal balance on a monthly basis.

The entry is:

Judgment affirmed in part and vacated in part. Remanded to the Superior Court for a redetermination of damages consistent with this opinion.