2004 ME 36

**FLEET NATIONAL BANK**

v.

**Michael A. LIBERTY et al.**

Supreme Judicial Court of Maine.

Argued: Oct. 15, 2003.
Decided: March 18, 2004.

Nicholas H. Walsh, Esq. (orally), Susan J. Szwed, Esq., Portland, for plaintiff.

George J. Marcus, Esq. (orally), Lee H. Bals, Esq., Jennifer H. Pincus, Esq., Marcus, Clegg & Mistretta, P.A., Portland, for defendants.

Mark L. Walker, Esq., Maine Bankers Association, Augusta, for amicus curiae.

Panel: CLIFFORD, and RUDMAN, DANA, ALEXANDER,* CALKINS, and LEVY, JJ.

---

\* Although not available at oral argument, Justice Alexander participated in the development of this opinion. *See* M.R.App. P. 12(a) (stating that a "qualified justice may participate in a decision even though not present at oral argument").

DANA, J.

[¶ 1] Michael A. Liberty, individually and as general partner and guarantor of several partnerships, and the partnerships themselves (hereinafter referred to as "Liberty") appeal from a judgment of the Superior Court (Cumberland County, *Cole, J.*) granting Fleet's motion for attachment and trustee process. Liberty asserts that the court erred in not applying a six-year statute of limitations enacted in 1993, 11 M.R.S.A. § 3–1118(1) (1995), to bar Fleet's suit on notes entered into before 1993. Fleet contends that the Superior Court properly applied the twenty-year statute of limitations, 14 M.R.S.A. § 751 (2003), for promissory notes signed before a witness. We agree and affirm the judgment.

## I. BACKGROUND

[¶ 2] In 1991 and 1992, Liberty issued three promissory notes to Fleet in the total amount of $1,004,000. The notes were negotiable instruments made payable on definite future dates, and the parties signed each note in the presence of an attesting witness. In 1992, as had been true for over a hundred years, the relevant statute of limitations provided that suits brought on "promissory notes signed in the presence of an attesting witness ... shall be commenced within 20 years after the cause of action accrues." 14 M.R.S.A. § 751 (2003).[1]

[¶ 3] By July of 1996 all of the notes were in default, and as of the motion hearing, Liberty had failed to make any payments. In 2002, Fleet filed suit to collect principal, interest, and penalties totaling $2,333,772.37, and filed a motion for attachment and trustee process. At a hearing on the attachment motion, Liberty asserted that the applicable statute of limitations had run on all three notes.[2] Liberty argued that 11 M.R.S.A. § 3–1118(1) (1995),[3] enacted in 1993, established a six-year statute of limitations for suit on all negotiable instruments, including promissory notes executed before an attesting witness. The Superior Court disagreed.

[¶ 4] The court concluded that, even if section 3–1118(1) might apply to such instruments issued today, in the absence of clear legislative intent it is inappropriate to apply the six-year statute of limitations to notes issued prior to its enactment. Instead the court applied the twenty-year statute of limitations in existence when Liberty signed the notes and granted Fleet's motion for attachment and trustee process for their face value. This appeal followed.

[¶ 5] This Court reviews an order granting attachment and trustee process for an abuse of discretion or clear error. *Liberty v. Liberty,* 2001 ME 19, ¶ 11, 769 A.2d 845, 847. To the extent we address issues of statutory interpretation our review is de novo. *State v. McLaughlin,* 2002 ME 55, ¶ 5, 794 A.2d 69, 72.

## II. DISCUSSION

[¶ 6] To vacate the court's order, we must conclude that section 3–1118(1)

---

1. The full text of section 751 states:

   Except as provided in Title 11, section 2–725, personal actions on contracts or liabilities under seal, promissory notes signed in the presence of an attesting witness or on the bills, notes or other evidences of debt issued by a bank shall be commenced within 20 years after the cause of action accrues.

   14 M.R.S.A. § 751 (2003).

2. Liberty relies on dicta in *Premier Capital, Inc. v. Doucette,* 2002 ME 83, ¶ 7, 797 A.2d 32, 34 applying section 3–1118(1) to a promissory note signed before an attesting witness.

3. 11 M.R.S.A. § 3–1118(1) is Maine's enactment of section 3–118(1) of the Uniform Commercial Code. *Compare* 11 M.R.S.A. § 3–1118(1) (1995) *with* U.C.C. § 3–118(a), 2 U.L.A. 378 (1991).

repealed section 751 either specifically or by implication, and did so even with respect to notes entered into before section 3–1118(1) was enacted. Because we conclude there was no repeal, we need not address the constitutional implications of any retroactive effect.

[¶ 7] Liberty argues that the Legislature intended section 3–1118(1) to repeal or amend section 751 so that the latter statute no longer governs any negotiable promissory notes. This intention is not evident on the face of section 3–1118(1), which reads:

> Except as provided in subsection (5), an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within 6 years after the due date or dates stated in the note or, if a due date is accelerated, within 6 years after the accelerated due date.

11 M.R.S.A. § 3–1118(1) (1995). The statutory comments and legislative history are also devoid of any reference to section 751 or its possible repeal.

[¶ 8] The legislative silence on this issue is telling, particularly in light of the commentary that accompanies other enactments of the Uniform Commercial Code (UCC). When the Legislature intends that the UCC will repeal an existing statute of limitations it has made that intention very clear. For example, the comment to 11 M.R.S.A. § 2–725 (which adopts a four-year statute of limitations for sales contracts) explicitly states, "[t]he four-year period under the Code would change present law. There is now a limitation of 6 years on personal actions." 11 M.R.S.A. § 2–725 comment (1995). That legislators chose not to make *any* mention of section 751 when adopting section 3–1118 is strong evidence that the Legislature did not intend to repeal the existing statute.

[¶ 9] Liberty nonetheless asks us to find that section 3–1118(1) repealed section 751 by implication, despite the well-established principle of statutory construction disfavoring this result. *See* 2A SUTHERLAND STATUTORY CONSTRUCTION § 51.02 (6th ed.2000). Traditionally, we have been reluctant to find that the enactment of one statute acts to repeal an earlier statute without an express legislative statement to that effect. *See Heber v. Lucerne–in–Maine Vill. Corp.*, 2000 ME 137, ¶ 14 n. 6, 755 A.2d 1064, 1068. In fact, we have only recognized a repeal by implication in circumstances " 'when a later enactment encompasses the entire subject matter of an earlier act, or when a later statute is inconsistent with or repugnant to an earlier statute.' " *Id.* (quoting *Blair v. State Tax Assessor*, 485 A.2d 957, 959 (Me.1984)). Because it is possible to read these statutes in harmony, a finding of repeal by implication is inappropriate.

[¶ 10] It is evident that section 3–1118(1) establishes a six-year statutory period for general, unattested negotiable instruments, while section 751 continues to provide a twenty-year statutory period for attested promissory notes, notes under seal, and notes issued by a bank. Not only is this interpretation consistent with the larger purposes of the UCC,[4] it also com-

---

4. The prefatory comment to Article 3 of the UCC makes it clear that the Code's framers were largely concerned with the need for uniformity in state laws given the tremendous increase in the volume of unattested personal checks crossing state lines. U.C.C. Art. 3–A Prefatory Note, 11 M.R.S.A. at 422 (1995). Moreover, as well as promoting uniformity, the UCC serves the stated purpose of encouraging "the continued expansion of commercial practices through custom, usage and agreement of the parties[.]" U.C.C. § 1–103(a)(2), 1 U.L.A. 5 (Supp.2003). It is evident that state laws providing a *shorter* statute of limitations might discourage lending and commerce by reducing the time in which a creditor may pursue a default in certain states. It is not clear, however, that the existence of a *longer* limitations period under

ports with the principle of statutory construction favoring specific statutes over general ones. 2A SUTHERLAND STATUTORY CONSTRUCTION § 51.02 (6th ed.2000). The six-year statutory period is a *general* provision governing negotiable instruments not issued pursuant to the formalities described in section 751. As has been true for over a hundred years, section 751 provides a twenty-year statute of limitations for *specific* kinds of promissory notes.

[¶ 11] In light of these considerations and the strong presumption against repeal by implication, we cannot conclude that section 3–1118(1) repealed section 751 by implication, and accordingly affirm the grant of the motion for attachment and trustee process.

The entry is:

Judgment affirmed.

LEVY, J., dissenting.

[¶ 12] The Court's opinion is, in my view, contrary to the Legislature's intent to have all provisions of Article 3–A of the Uniform Commercial Code apply to all types of negotiable instruments, including the precise class of promissory notes at issue in this case. I therefore respectfully dissent.

A. Article 3–A of the U.C.C. Applies to Negotiable Demand Notes

[¶ 13] Article 3–A of the U.C.C. was enacted in Maine in 1993, prior to the defaults asserted by Fleet Bank as the basis for this action. As its prefatory note makes clear, Article 3–A is intended to provide a uniform and national approach to negotiable instruments:

> The law for payments through checks and which governs *other negotiable instruments similarly* should be uniform and up-to-date, either through state enactments or Federal preemption. Otherwise, checks as a viable payment system in international and national transactions will be severely hampered *and the utility of other negotiable instruments impaired.*

U.C.C. Art. 3–A Prefatory Note, 11 M.R.S.A. at 423 (1995) (emphasis added).

[¶ 14] The Court states that "[i]t is evident that section 3–1118(1) establishes a six-year statutory period for general, unattested negotiable instruments," but not the attested promissory notes at issue here. It also suggests in a footnote that the framers of Article 3–A were "largely concerned with the need for uniformity in state laws given the tremendous increase in the volume of unattested personal checks crossing state lines." This reading of the statute and its legislative history is inconsistent with the prefatory note of the National Conference of Commissioners on Uniform State Law and the American Law Institute and the actual provisions of Article 3–A.

[¶ 15] Article 3–A governs all negotiable instruments, not simply personal checks, and covers the promissory notes at issue here. *See* 11 M.R.S.A. §§ 3–1102, 1104(1), 1104(4) (1995) (defining the subject matter of Article 3–A and negotiable instruments). We have previously acknowledged the applicability of Article 3–A's six-year statute

---

state law frustrates the stated goal of expanding commercial practice. Only those planning to default on a note are discouraged from practicing commerce in a state that provides a longer statute of limitations. In fact, in those cases where courts have determined that section 3–118 takes priority over state statutes broadly applicable to written con-

tracts, the UCC provides a *longer* period in which to bring suit. *E.g., Motley v. Motley,* 60 F.Supp.2d 380, 382 (D.N.J.1999); *Fales v. Norine,* 263 Neb. 932, 644 N.W.2d 513, 521 (2002); *Emerson v. Zagurski,* 3 Neb.App. 658, 531 N.W.2d 237, 241 (1995); *Lenders Collection Corp. v. Harris,* 900 P.2d 1022, 1023–24 (Okla.Ct.App.1995).

of limitations to negotiable promissory notes in *Premier Capital, Inc. v. Doucette*, 2002 ME 83, ¶ 7, 797 A.2d 32, 34, and *Johnson v. McNeil*, 2002 ME 99, ¶ 9, 800 A.2d 702, 704. The provisions of Article 3–A plainly cover the promissory notes issued by Liberty.

[¶ 16] The previously quoted excerpt from Article 3–A's prefatory note establishes that the framers of the article were concerned with all forms of negotiable instruments, not simply personal checks. Article 3–A establishes a comprehensive code governing all facets of negotiable instruments ranging from their creation to their enforcement. *See* 1A SUTHERLAND STATUTORY CONSTRUCTION § 23:14, at 505–06 (6th ed.2002) [hereinafter SUTHERLAND] ("The enactment of a code contemplates a systematic and complete body of law designed to function as the sole regulatory law on the subject to which it relates.... [and such provisions] are liberally interpreted to effectuate the purpose of their enactment."). When a comprehensive code such as Article 3–A "purports to cover the entire field of regulation[,] any prior law not included in the code is repealed ... [if it is] the intent of the legislature to create a single, complete and exclusive body of law in substitution for all previous enactments." *Id.* § 28:13, at 662–63.

[¶ 17] Article 3–A's prefatory note provides explicit support for the view that the legislature intended that the new six-year statute of limitations contained in section 3–1118(1) would supersede any preexisting, inconsistent period of limitations. Although the Legislature did not promulgate a Maine comment regarding each section of Article 3–A, section 3–1118 (codified as section 3–118 in the U.C.C.) and 14 M.R.S.A. § 751 were addressed in the prefatory note to Article 3–A:

> **Statute of Limitations**—Sections 3–118 and 4–111 include statutory periods of limitations which will make the law uniform rather than leaving the topic to widely varying state laws.

U.C.C. Art. 3–A Prefatory Note, 11 M.R.S.A. at 425. At the time of Article 3–A's enactment in Maine, the twenty-year limitations period established in section 751 was an existing state law that was widely variant from section 3–1118(1)'s six-year limitations period.

**B. The Partial Repeal by Implication of 14 M.R.S.A. § 751 is Fully Warranted**

[¶ 18] The applicable rule of statutory construction is that the Legislature will not be presumed to have intended the repeal of a statute by implication.[5] That presumption is overcome "when a later enactment encompasses the entire subject

---

5. This rule of statutory construction was explained in *State v. Taplin*, 247 A.2d 919 (Me. 1968) as follows:

> [W]e must bear in mind certain well established principles of statutory construction respecting repeals by implication. Our Court has, in *State v. London*, spelled out many of these well recognized rules of statutory interpretation and cited the authorities in support thereof. Thus, we observe that repeals by implication are not favored. The Legislature will not be presumed to have intended a repeal. However, implied repeals do exist and must be given effect based as they are on the rationale that "the legislature cannot be supposed to have intended that there should be two distinct enactments embracing the same subject matter in force at the same time, and that the new statute, being the most recent expression of the legislative will, must be deemed a substitute for previous enactments, and the only one which is to be regarded as having the force of law." Nevertheless, implied repeals, provided no contrary legislative intent appears, will be restricted in scope to the extent of the inconsistency or conflict.

*Id.* at 922 (internal citations omitted) (quoting *Knight v. Aroostook River R.R. Co.*, 67 Me. 291, 293 (1877)).

matter of an earlier act, or when a later statute is inconsistent with or repugnant to an earlier statute." *Heber v. Lucerne–in–Maine Vill. Corp.,* 2000 ME 137, ¶ 14 n. 6, 755 A.2d 1064, 1068 (quoting *Blair v. State Tax Assessor,* 485 A.2d 957, 959 (Me. 1984)). As applied to the negotiable promissory notes issued by Liberty, the twenty-year statute of limitations in section 751 is inconsistent with and repugnant to the six-year statute of limitations in section 3–1118(1).

[¶ 19] In addition, section 3–1118(1) should be regarded as the more specific of the two statutes as applied to negotiable instruments. Not only are the notes issued by Liberty negotiable instruments, they are negotiable instruments that are "payable at a definite time," which is the specific type of note addressed in subsection (1) of section 3–1118. Section 751 is, in contrast, a more general statute, governing both negotiable and nonnegotiable "contracts or liabilities under seal, promissory notes signed in the presence of an attesting witness or on the bills, notes or other evidences of debt issued by a bank. . . ." 14 M.R.S.A. § 751 (2003). Although the notes issued by Liberty are addressed by both statutes, section 3–1118(1) is the more specific of the two and the most recent in time. 1A SUTHER-

LAND § 22:22, at 324–26; *see also Lenders Collection Corp. v. Harris,* 900 P.2d 1022, 1023–24 (Okla.Ct.App.1995) (concluding that section 3–118 effected an implicit repeal of a broad contract statute of limitations as applied to promissory notes because the new section "is the more specific of the two statutes"); *Blair v. State Tax Assessor,* 485 A.2d 957, 959 (Me.1984) (stating that "[w]hen a later statute does not cover the earlier act in its entirety, but is inconsistent with only some of its provisions, a repeal by implication occurs to the extent of the conflict.").

[¶ 20] Sections 3–1118(1) and 751 can be read in harmony only insofar as they apply to the classes of non-negotiable instruments listed in section 751. With regard to the negotiable instruments in this case, section 751 and section 3–1118(1) are inharmonious. "[W]here two statutes deal with the same subject matter, the more recent enactment prevails as the latest expression of legislative will." 2B SUTHERLAND § 51.02, at 193–94 (6th ed.2000).[6] As the two statutes pertain to instruments that fall within the ambit of Article 3–A of the U.C.C., section 3–1118(1) is the most recent and specific expression of the Legislature's intent and should be treated as having partially superseded section 751. *See* 1A SUTHER-

---

**6.** *See Lewiston Firefighters Assoc. v. City of Lewiston,* 354 A.2d 154, 159–60 (Me.1976), stating:

> [The] "presumption" against repeal by implication is not an inflexible bar to judicial inquiry but is, rather, a manner of stating legislative intent. Thus, the implied repeal of an earlier by a later statute is grounded in ". . . the reasonable inference that the legislature cannot be supposed to have intended that there should be two distinct enactments embracing the same subject matter in force at the same time, and that the new statute, being the most recent expression of the legislative will, must be deemed a substitute for previous enact-

ments, and the only one which is to be regarded as having the force of law."

*Id.* (quoting *Knight,* 67 Me. at 293). *See also* 1A SUTHERLAND § 23:9, at 457, 471–74, stating:

> [L]egislatures cannot be expected to have complete knowledge [to specify every statute to be repealed]. . . .
>
> . . . .
>
> . . . When a subsequent enactment covering a field of operation coexistent with a prior statute cannot by any reasonable construction be given effect while the prior law remains in existence because of irreconcilable conflict between the two acts, the latest legislative expression prevails, and the prior law yields to the extent of the conflict.

LAND § 22:22, at 326–27 (stating that the partial repeal and replacement by the more recent of two inconsistent acts is appropriate).

[¶ 21] The Legislature that enacted section 751 in 1841 could not have anticipated the complexities of interstate commerce in the 21st century and the utility for Maine and the nation of having uniform standards govern the creation, and enforcement of negotiable instruments.[7] An action based on defaults in the payment of promissory notes that occurred after Article 3–A took effect in 1993 should be governed by section 3–1118(1).

---

7. Other states have applied U.C.C. Article 3–A § 3–118 to negotiable promissory notes over their preexisting statutes of limitation. *E.g., Motley v. Motley,* 60 F.Supp.2d 380, 384 (D.N.J.1999); *Springfield Oil Servs. v. Costello,* 941 F.Supp. 45, 47–48 (E.D.Pa.1996); *Emerson v. Zagurski,* 3 Neb.App. 658, 531 N.W.2d 237, 240–41 (1995). However, a few states have enacted special savings clauses to apply preexisting statutes that would address the issue we face at bar. *E.g., Samples–Ehrlich v. Simon,* 876 P.2d 108, 111 (Colo.Ct. App.1994) (applying a statute of limitations that was in effect when a note was negotiated due to a savings clause in the statute).