2006 ME 85

**YEADON FABRIC DOMES, INC.**

v.

**MAINE SPORTS COMPLEX, LLC.**

Supreme Judicial Court of Maine.

Argued: May 8, 2006.
Decided: July 13, 2006.

Jon A. Haddow, Esq. (orally), Farrell, Rosenblatt & Russell, Bangor, for plaintiff.

Peter D. Klein, Esq. (orally), Eaton Peabody, (for Steven Hoksch), Christopher R. Largay, Esq. (orally), Joseph M. Pickering, Esq., Largay Law Offices, P.A., (for Kiser & Kiser Co.), Charles E. Gilbert III, Esq. (orally), Gilbert & Greif, P.A., Bangor, (for Harriman Brothers, Inc.), for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

CALKINS, J.

[¶ 1] Yeadon Fabric Domes, Inc. appeals from a judgment entered in the District Court (Bangor, *Gunther, J.*) in favor of Yeadon, Harriman Brothers, Inc., and Kiser & Kiser Company, against Maine Sports Complex, LLC (MSC). The judgment set the order of priority among MSC's creditors. Yeadon contends that the court erred when it held that Harriman's and Kiser's mechanic's liens had priority over its perfected security interest in a fixture attached to MSC's land. In resolving this matter, we are called upon to determine whether two apparently conflicting statutes can be harmonized: 10 M.R.S. § 4012 (2005), which gives title 11 perfected security interests priority over title 10 liens, and 11 M.R.S. § 9–1334(3) (2005), which subordinates security interests in fixtures to conflicting interests of encumbrancers. We interpret 10 M.R.S. § 4012 to refer only to personal property and not to fixtures. With that interpretation, 10 M.R.S. § 4012 is inapplicable to this case, and, pursuant to 11 M.R.S. § 9–1334(3), Yeadon's security interest is subordinate to the mechanic's liens of Harriman and Kiser. Thus, we affirm the judgment.

## I. BACKGROUND

[¶ 2] In 2001, MSC entered into a series of business transactions for the purpose of building a sports complex in Hampden. It purchased real estate and gave a mortgage to the seller, H.O. Bouchard, Inc. It engaged Kiser to provide engineering services for the construction of the complex. MSC entered into a contract to purchase an inflatable, fabric dome from Yeadon, along with the materials and equipment required to erect and operate the dome. MSC contracted with Harriman to provide groundwork for the sports complex. MSC also obtained a loan from Bangor Savings Bank, giving the bank a mortgage, which was later assigned to Steven Hoksch. MSC defaulted on its obligations to these various entities, and litigation resulted.

[¶ 3] Yeadon had filed a financing statement for the dome and equipment with the Secretary of State on July 22, 2002. It brought a forcible entry and detainer action for personalty pursuant to 14 M.R.S. § 6012 (2005) against MSC, seeking to recover the dome. The court (*LaVerdiere, J.*) dismissed the action after concluding that the dome was a fixture and not personal property. Subsequently, on February 27, 2004, Yeadon recorded a financing statement in the Penobscot County Registry of Deeds.

[¶ 4] Yeadon filed a collection action against MSC, which was consolidated with other collection actions that had been filed by Harriman and Kiser. Both Harriman and Kiser had filed mechanic's lien claims, pursuant to 10 M.R.S. § 3253 (2005), and brought court actions to enforce their lien claims, pursuant to 10 M.R.S. § 3255 (2005). After motions for summary judgment, motions for default, and hearings, the court issued a final judgment detailing the order of priority of MSC's creditors and the amounts owed by MSC. The court found that Kiser began its work for MSC on December 3, 2001, and that Harriman began its work on December 7, 2001. The court put Yeadon last in the order of priority.

[¶ 5] Yeadon appealed from the determination of its priority. Kiser and Harriman filed briefs and argued in opposition. Hoksch filed a brief and argued in support of Yeadon.

## II.  DISCUSSION

### A.  Statutes

[¶ 6] The issue in this case is whether the court erred in determining the order of priority afforded to Harriman's and Kiser's mechanic's liens and to Yeadon's security interest in the dome.  There are several statutes that bear on the question of priority.  There are the statutes in Maine's version of the Uniform Commercial Code dealing with secured transactions, and there is also a statute in title 10.

[¶ 7] Maine's version of the U.C.C. sets out requirements concerning security interests and how to perfect them.  Generally speaking, a financing statement must be filed to perfect a security interest.  11 M.R.S. § 9–1310(1) (2005).  A security interest is perfected by filing unless certain exceptions apply, none of which are applicable here.  11 M.R.S. § 9–1310(1).  A security interest in fixtures may be perfected by filing the financing statement in either of two places: in the registry of deeds for the county where the related real property is located, or in the Secretary of State's office.  11 M.R.S. § 9–1501(1) (2005).  The relevant portions of section 9–1501(1) provide:

> [T]he office in which to file a financing statement to perfect the security interest . . . is:
>
> (a) The registry of deeds for the county in which the related real property is located, if:
>
> . . . .
>
> (ii) The financing statement is recorded as a fixture filing and the collateral is goods that are or are to become fixtures;  or
>
> (b) The office of the Secretary of State, in all other cases, including a case in which the collateral is goods that are or are to become fixtures and the financing statement is not filed as a fixture filing.

Thus, for goods that are, or are to become, fixtures, the secured party who wishes to perfect a security interest should file the financing statement in the county registry of deeds if the filing is to be a fixture filing, or with the Secretary of State.[1]

[¶ 8] A fixture filing is defined as "the filing of a financing statement covering goods that are or are to become fixtures and satisfying section 9–1502, subsections (1) and (2)."  11 M.R.S. § 9–1102(40) (2005).  Section 9–1502 lists the information that a financing statement must contain to qualify as a fixture filing.  11 M.R.S. § 9–1502(1), (2) (2005).

[¶ 9] The provision in Maine's version of the U.C.C. dealing with the priority of security interests in fixtures is 11 M.R.S. § 9–1334 (2005).  The general rule is that "a security interest in fixtures is subordinate to a conflicting interest of an encumbrancer or owner of the related real property other than the debtor."  11 M.R.S. § 9–1334(3).  An encumbrance is defined as "a right, other than an ownership interest, in real property."  11 M.R.S. § 9–1102(32) (2005).  The term "includes mortgages and other liens on real property."  11 M.R.S. § 9–1102(32).

[¶ 10] There are exceptions to the general rule and several alternatives by which a

---

1.  The comment to the Uniform Commercial Code equivalent of 11 M.R.S. § 9–1501 (2005) provides:

> There are two ways in which a secured party may file a financing statement to perfect a security interest in goods that are or are to become fixtures.  It may file in the Article 9 records, as with most other goods.  Or it may file the financing statement as a "fixture filing," . . . in the office in which a record of a mortgage on the related real property would be filed.

U.C.C. § 9–501 comment (2002) (citation omitted).

security interest in fixtures has priority over conflicting interests. The alternatives that are most likely to fit the factual situation of this case are found in 11 M.R.S. § 9–1334(4) and (5). The first of these alternatives is in section 9–1334(4), which gives a perfected security interest in fixtures priority when the debtor has an interest of record in, or is in possession of, the real property; the security interest in fixtures is a purchase-money security interest; the encumbrancer's interest arose before the goods became fixtures; and the security interest was perfected by a fixture filing before or within twenty days of the time the goods became fixtures. Another alternative is section 9–1334(5)(a), which states that a perfected security interest in fixtures has priority if:

(a) The debtor has an interest of record in the real property or is in possession of the real property and the security interest:

(i) Is perfected by a fixture filing before the interest of the encumbrancer or owner is of record; and

(ii) Has priority over any conflicting interest of a predecessor in title of the encumbrancer or owner . . . .

There is also the alternative in section 9–1334(5)(c), which states that a perfected security interest in fixtures has priority if "[t]he conflicting interest is a lien on the real property obtained by legal or equitable proceedings after the security interest

was perfected by any method permitted by this Article."

[¶ 11] The final statute that bears on this case is in title 10, which contains the statute authorizing the mechanic's liens filed by Harriman and Kiser. *See* 10 M.R.S. § 3251 (2005). Specifically, 10 M.R.S. § 4012 states: "A security interest perfected in accordance with Title 11 has priority over any lien created or referred to by this Title unless the person claiming the lien has possession of the goods subject to the lien." [2]

B. Application of the Statutes to the Facts

■ [¶ 12] Yeadon filed a financing statement covering the dome and equipment with the Secretary of State on July 22, 2002, and with the registry of deeds on February 27, 2004. The court determined that the dome with its equipment is a fixture.[3] The claims of Kiser and Harriman are pursuant to the mechanic's lien statute. 10 M.R.S. § 3251. Kiser began work on December 3, 2001, filed its lien on November 18, 2002, and filed its enforcement action on February 10, 2003. Harriman began work on December 7, 2001, filed its lien on August 27, 2002, and filed the enforcement action on October 17, 2002.

■ [¶ 13] The issue is whether the District Court correctly placed Yeadon's

---

2. Title 10 M.R.S. § 4012 (2005) was enacted in the legislation that sought to correct errors and inconsistencies in the initial enactment of the U.C.C. in Maine. P.L.1965, ch. 306, Emergency Preamble; P.L.1965, ch. 306, § 3 (effective May 20, 1965).

3. The court made this determination by relying on the earlier judgment in the forcible entry and detainer action, which the court determined was res judicata on the issue. The forcible entry and detainer court found that the dome and equipment were "more in

the nature of a fixture permanently attached to the land, and thus subject to be treated as realty, not as personal property." Kiser now argues that the dome and its equipment were "ordinary building materials incorporated into an improvement on land," in which there can be no security interest. *See* 11 M.R.S. § 9–1334(1) (2005). However, Harriman and Kiser were permitted to intervene in the forcible entry and detainer proceeding, and, therefore, the finding that the dome with its equipment is a fixture is binding on them.

priority after Harriman and Kiser. The determination of the correct priority requires an interpretation and application of the statutes. Statutory interpretation is a question of law that we review de novo. *City of Bangor v. Penobscot County*, 2005 ME 35, ¶ 9, 868 A.2d 177, 180. The primary goal of statutory interpretation is to give effect to the intention of the Legislature. *Id.* To meet that goal we examine the plain meaning of the statute. *Id.* Only if the statutory language is ambiguous do we go beyond the plain meaning and look at the legislative history. *Temm v. S.D. Warren Co.*, 2005 ME 118, ¶ 8, 887 A.2d 39, 41.

[¶ 14] Yeadon perfected its security interest when it filed a financing statement with the Secretary of State on July 22, 2002. This filing did not qualify as a fixture filing, but 11 M.R.S. § 9–1501(1)(b) provides that a security interest in goods that are, or are to become, fixtures can be perfected by filing with the Secretary of State. There is no requirement that a fixture filing be made in order to perfect a security interest in fixtures. Yeadon's later filing with the registry of deeds on February 27, 2004, qualified as a fixture filing.

[¶ 15] The significance of a fixture filing, as compared to a filing with the Secretary of State, is shown in 11 M.R.S. § 9–1334. A fixture filing is necessary for a security interest in fixtures to obtain priority pursuant to sections 9–1334(4) and (5)(a). In order for Yeadon to obtain priority over Harriman and Kiser pursuant to section 9–1334(4), which is one of the exceptions to the general rule that security interests in fixtures are subordinate, Yeadon's security interest had to be perfected by a fixture filing before the dome became a fixture or within twenty days thereafter. The record is not clear as to when the dome became a fixture, but it had obvious-ly become a fixture before July 21, 2003, the date of the forcible entry and detainer hearing. As Yeadon's fixture filing was not made until February 2004, it was not made within twenty days of the time the dome became a fixture. Thus, section 9–1334(4) is of no help to Yeadon.

[¶ 16] To obtain priority over Harriman and Kiser pursuant to section 9–1334(5)(a), Yeadon's security interest had to be perfected by a fixture filing before the Harriman or Kiser interests became of record. Because Yeadon's fixture filing was not made until 2004 and both Harriman's and Kiser's title 10 liens were of record in 2002, Yeadon does not have priority over Harriman and Kiser pursuant to section 9–1334(5)(a).

[¶ 17] The final provision in section 9–1334 worth discussion is section 9–1334(5)(c), which gives priority to a security interest in fixtures over a conflicting interest that is a lien on the real property obtained by legal or equitable proceedings after the perfection of the security interest, regardless of whether the security interest was perfected by a fixture filing or a filing with the Secretary of State. This alternative does not assist Yeadon because the mechanic's liens held by Harriman and Kiser are not liens obtained by legal or equitable proceedings. Mechanic's liens are *enforced* by legal proceedings, but they are *obtained* by operation of statute and the filing of the liens pursuant to the statute. *See* 10 M.R.S. §§ 3251, 3253, 3255.

[¶ 18] Yeadon does not come within the alternatives in section 9–1334 that give priority to security interests in fixtures over conflicting interests. Thus, the general rule in section 9–1334(3) subordinating a security interest in fixtures to a conflicting interest of an encumbrancer applies, and Yeadon's security interest is subordinate to Harriman's and Kiser's mechan-

ic's liens unless 10 M.R.S. § 4012 gives Yeadon priority.

[¶ 19] Section 4012 plainly states that a security interest perfected in accordance with title 11 has priority over any non-possessory lien created by title 10. If the plain meaning of section 4012 controls, Yeadon's security interest takes priority over Harriman's and Kiser's mechanic's liens. On its face, section 4012 is in direct conflict with the rule in 11 M.R.S. § 9–1334(3) that security interests in fixtures are subordinate to conflicting interests of an encumbrancer. No cases interpreting section 4012 have been called to our attention, and our independent research has not uncovered any.[4]

■ [¶ 20] When two statutes appear to be inconsistent, we should harmonize them if at all possible. *See Fleet Nat'l Bank v. Liberty*, 2004 ME 36, ¶ 9, 845 A.2d 1183, 1185. It is tempting to try to harmonize the statutes by interpreting the term "encumbrancer" in section 9–1334(3) as not applying to the holder of a mechanic's lien. A leading commentary on article 9 suggests such an interpretation.[5] 9B WILLIAM D. HAWKLAND ET AL., UNIFORM COMMERCIAL CODE SERIES § 9–334:1 (2001). However, the term "encumbrance" is defined in 11 M.R.S. § 9–1102(32) as "a right, other than an ownership interest, in real property" and "includes mortgages and other liens on real property." Thus, an interpretation of section 9–1334(3) that excludes holders of me-

chanic's liens from being encumbrancers appears disingenuous.

[¶ 21] Another possibility for harmonizing the two statutes is to interpret section 4012 as giving a security interest in fixtures priority over any title 10 non-possessory lien only when the title 10 lien is created after the date the security interest is perfected. In other words, we could interpret section 4012 as giving priority to the creditor who is first in time. A first in time interpretation, however, requires additional language concerning when the security interest is "perfected" and when the title 10 lien is "created." This interpretation is not a reasonable one because it requires reading into section 4012 far more language than appears in it. Furthermore, because a detailed first in time priority for security interests in fixtures is contained in 11 M.R.S. § 9–1334(5)(a), the goal of harmonizing the statutes would be defeated unless the additional requirements of section 9–1334(5)(a) were also read into section 4012.

■ [¶ 22] The most reasonable interpretation of section 4012 is that it does not apply to fixtures. There are several reasons why this interpretation is desirable. First, the chapter in which section 4012 is located appears to deal only with liens on personal property. *See* 10 M.R.S. § 4001 (2005) (referring to possessory liens on personal property); 10 M.R.S. § 4008 (2005) (allowing for sale of "the article on which the lien is claimed"); *see also* Hor-

---

**4.** There appears to be only one case that cites 10 M.R.S. § 4012. *See Gen. Motors Acceptance Corp. v. Colwell Diesel Serv. & Garage, Inc:,* 302 A.2d 595, 600–01 (Me.1973) (stating that by giving perfected security interests priority over non-possessory title 10 liens in section 4012, the Legislature "indicated its approval of the broad intended sweep of [11 M.R.S.A. § ] 9–310," which gave priority to possessory liens over perfected security interests).

**5.** But it also states that it is possible that "encumbrancer" includes the holder of a mechanic's lien, in which case, it adds, there may be conflicts between article 9 and a state's mechanic's lien statute. 9B WILLIAM D. HAWKLAND ET AL., UNIFORM COMMERCIAL CODE SERIES § 9–334:1 n. 7 (2001).

ton & McGehee, *Maine Civil Remedies* § 24–6(d) at 450 (4th ed.2004) (stating that 10 M.R.S. §§ 4001–4012 apply to liens on personal property). Second, it is highly doubtful that the Legislature intended to enact a statute that is directly contrary to another statute. If section 4012 applies to fixtures, then section 4012 is directly contrary to 11 M.R.S. § 9–1334(3), a result we doubt the Legislature intended. Third, section 9–1334 contains considerably more detail regarding the situations in which conflicting interests in a fixture can arise than does section 4012, and it therefore makes sense to construe the more general section 4012 to fit with the more specific section 9–1334. *See Fleet Nat'l Bank,* 2004 ME 36, ¶ 10, 845 A.2d at 1185–86. Fourth, because section 4012 was included in the errors and inconsistencies legislation following the enactment of the Maine U.C.C., the Legislature itself saw section 4012 as consistent with the priorities established in title 11.[6]

[¶ 23] For these reasons, we conclude that interpreting section 4012 as not applying to fixtures is a reasonable interpretation that comports with the Legislature's intention and harmonizes section 4012 with section 9–1334(3). Under this interpretation of section 4012, the statute is not applicable to Yeadon's security interest in the fixture. The liens of Harriman and Kiser have priority over Yeadon's security interest because section 9–1334(3) subordinates Yeadon's security interest in the fixture to the mechanic's liens.

The entry is:

Judgment affirmed.

---

**6.** Even if we were to construe section 4012 as applying to fixtures, the fact that section 4012 was enacted after title 11 does not assist Yeadon. The enactment of section 4012 did not impliedly repeal 11 M.R.S. § 9–1334(3) (2005). *See* 11 M.R.S. § 1–104 (2005) (stating that no part of title 11 "shall be deemed to be impliedly repealed by subsequent legislation if such construction can reasonably be avoided"). Furthermore, when article 9 of title 11 was repealed and replaced with article 9–A, P.L.1999, ch. 699, §§ A–1 to A–2 (effective July 1, 2001), 11 M.R.S. § 9–1334 (2005) was enacted to replace 11 M.R.S.A. § 9–313 (1995), but 10 M.R.S. § 4012 was not changed from its original text. *Compare* 10 M.R.S. § 4012, *with* 10 M.R.S. § 4001 (2005) (concerning possessory liens and referring to the revised "Title 11, Article 9–A").