2008 ME 32

**STATE of Maine**

v.

**Margo MALPHER.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Nov. 27, 2007.

Decided: Feb. 28, 2008.

---

Ronald W. Bourget, Esq. Bourget & Bourget, P.A., Augusta, ME, for Margo Malpher.

Michael Povich, Dist. Atty., Paul Cavanaugh, II, First Asst. Dist. Atty., Ellsworth, ME, for the State of Maine.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, and GORMAN, JJ.

GORMAN, J.

[¶ 1] Margo Malpher appeals from a judgment of the District Court (Calais, Romei, J.) forfeiting Malpher's twenty dogs and one cat to the State of Maine Animal Welfare Program. Maipher argues that: (1) notice by service and filing of an ex parte order and application for the order, to initiate forfeiture proceedings, is improper procedure pursuant to 17 M.R.S. § 1021 (2007), and is insufficient to constitute due process; and (2) 17 M.R.S. § 1021 is void for vagueness.[1] We affirm the District Court's judgment.

## I. BACKGROUND

[¶ 2] In September 2006, Chrissy Perry, a humane agent for the State of Maine Animal Welfare Program, began an investigation of an anonymous complaint that Margo Malpher had several dogs that were not regularly cared for and were living in filthy conditions. After finding no one home at Malpher's residence on two consecutive days, and posting notices on Malpher's residence and adjacent kennel, Perry applied for and obtained a search warrant to inspect the animals and seize them if necessary.

[¶ 3] Perry returned to Malpher's home on September 21, 2006, with a veterinarian, and a state trooper, to execute the search warrant. Malpher was home and initially declined to let the team inspect the animals, but did comply when served with a copy of the search warrant. The team first entered the kennel and found it to be filthy. Feces and urine covered much of the floor, and there was little or no ventilation. Perry and her team found nineteen dogs in the kennel; all of the dogs' coats were heavily matted, covered in feces, and wet with urine. The team next inspected Malpher's residence, where it found one more dog and one cat and the same "unlivable" conditions.

---

1. Malpher makes several unmeritorious su-barguments that we decline to reach.

[¶ 4] Based on the condition of the animals, the team seized them[2] and transported them to the Bangor Humane Society. Malpher, who had acknowledged seeing the notices left by Perry, was present when Perry and her team loaded the animals into their vehicles.

[¶ 5] On September 25, after obtaining reports about the dogs from the veterinarian and groomers at the shelter, Perry applied for an ex parte order to continue seizure of the animals. Perry stated in the application that Malpher had cruelly abandoned or cruelly treated the animals within the meaning of 7 M.R.S. § 4011 or 17 M.R.S. § 1031. Perry also stated that an ex parte order was necessary, pursuant to 17 M.R.S. § 1021(4), because the animals had been deprived of necessary medical attention and humanely clean conditions.

[¶ 6] Perry's application was granted, and the ex parte order generated by her application was entered in the District Court on the same day. Malpher was served with the ex parte documents, which included notice that a "show cause" hearing had been set for October 5, 2006. The order stated that Malpher was to appear at the Calais District Court on that date to show cause why the animals should be returned to her possession. On October 4, 2006, Malpher filed a motion to continue the "show cause" hearing to a later date. The court granted that motion and rescheduled the hearing for October 20, 2006. The parties appeared on that date and again on November 7, 2006. After the two-day hearing, the court ordered the animals forfeited to the State of Maine Animal Welfare Program.[3] The court found that the animals were "prisoners in their own coats" and that the animals had

been treated cruelly due to deprivation of humanely clean conditions. Malpher filed this timely appeal.

## II. DISCUSSION

[¶ 7] Malpher's first argument on appeal is that the notice she received by service of the ex parte application and order was not the proper procedure to initiate forfeiture proceedings under 17 M.R.S. § 1021 and was insufficient to meet the requirements of due process. We disagree.

[¶ 8] During the hearing, Malpher asserted that the case was not brought correctly under the statute and that notice was flawed. The trial court found no error in the State's process under section 1021. Because we are reviewing the trial court's interpretation of section 1021, we must review the statute de novo. *See Yeadon Fabric Domes, Inc. v. Me. Sports Complex, LLC*, 2006 ME 85, ¶ 13, 901 A.2d 200, 205.

[¶ 9] Section 1021 provides for several proceedings the State may initiate to protect animals. For purposes of reviewing the process used in this case, we discuss the various proceedings.

[¶ 10] Title 17 M.R.S. § 1021(1) permits an authorized person, such as a humane agent, to apply to the District or Superior Court for authorization to take possession of an animal in dire circumstances. The authorized person is required to notify the animal's owner of the proposed seizure and of the scheduled date for a "show cause" hearing. 17 M.R.S. § 1021(2). At that hearing, the owner has an opportunity to show cause why the

---

2. The team seized one standard poodle, sixteen miniature poodles, one Cavalier King Charles spaniel, two poodle-spaniel mixed breed dogs, and one longhaired gray cat.

3. Malpher raised a constitutional challenge to the statute during the hearing and the court ruled that the statute is constitutionally sufficient.

animal should not be "taken and turned over to the applicant or other suitable person or disposed of humanely." *Id.* If, after that hearing, the court finds that the animal has been "cruelly abandoned or cruelly treated by its owner or the animal is maimed, disabled, diseased, dehydrated, malnourished or injured," the court is directed to make an appropriate order for the animal's care or disposal. 17 M.R.S. § 1021(3).

[¶ 11] When the animal's condition appears to be even more serious, an authorized person may apply to the District or Superior Court or to a justice of the peace for an ex parte order authorizing him or her to seize the animal before a hearing has occurred. 17 M.R.S. § 1021(4). Because this method involves an immediate seizure, the judicial officer granting the order must first determine that the animal's condition or circumstances are grave. *Id.* When an ex parte seizure occurs, either the applicant or the owner may appear in the District or Superior Court and "move the dissolution or modification of the ex parte order." 17 M.R.S. § 1021(4)(C).

[¶ 12] As a third alternative, an authorized person may apply to the District or Superior Court for authorization to take possession of the animal "for examination and observation for a 30–day period." 17 M.R.S. § 1021(5). This method requires that the owner of the animal be notified of a "show cause" hearing before the animal can be seized permanently or humanely destroyed. *Id.*

[¶ 13] Finally, an authorized person who has reasonable cause to believe that an animal is being subjected to cruelty as defined by 17 M.R.S.A. § 1031 (Supp. 2006)[4] or 17 M.R.S. § 1032, may seize the animal without an order. 17 M.R.S. § 1021(5–A). Upon making the seizure, the agent is required to present the owner with notice of the reason for the seizure, contact information, and information concerning the "ensuing court procedure." *Id.* In those cases where the State intends to charge the owner with a crime, this subsection would effect an immediate end to the alleged criminal activity.

[¶ 14] In this case, however, the initial "taking" of the animals occurred as a result of a search warrant, rather than any of the above processes. Perry had obtained the warrant in order to ascertain the status of animals that appeared to have been abandoned at Malpher's property and, based upon the conditions she found, executed the warrant and took the animals. On Monday, September 25, 2006, although the animals were already in the State's custody pursuant to the search warrant, Perry applied for an ex parte order[5] to take immediate possession of the animals without prior notice to the owner. In her application, Perry alleged that Malpher had cruelly abandoned or cruelly treated twenty dogs and one cat, and that there was a need for the ex parte order because there was a reasonable likelihood that "there [was] a danger that unless immediate action [was] taken ... the condition of an ... animal deprived of ... necessary medical attention ... or humanely clean conditions [would] be substantially impaired or worsened." Perry attached to her application a six-page statement that included the information that prompted her to apply for the search

4. Title 17 M.R.S.A. § 1031 has since been amended. P.L. 2007, ch. 439, § 37 (effective Sept. 20, 2007) (codified at 17 M.R.S. § 1031 (2007)).

5. The form application used by Perry incorrectly includes a reference to 17 M.R.S.A. § 1021 "(5a)," which is not an actual subsection; subsection 5–A refers to the seizure of animals without a court order.

warrant as well as information about the condition of the animals that had been seized. Her application was granted on September 25 and Perry delivered to Malpher a copy of the ex parte order and a copy of her application, with her attached statement. The order included a hearing date, and the application and statement contained Perry's name, address, and telephone number.

[¶ 15] Based upon the facts of this case, we are satisfied that, by explaining to Malpher on September 21, 2006, why she was taking the animals, and by providing Malpher with copies of the ex parte application and order, Perry provided Malpher with sufficient notice of the reason she had taken the animals as well as notice of an already-scheduled court hearing.

[¶ 16] In addition, Malpher was afforded due process when she was given a full opportunity over two days of trial to present her case, explain the condition of the animals, and argue that they should be returned to her. Her argument to the trial court that the animals' condition was analogous to that of a person with dreadlocks was apparently not convincing. We find the trial court's holding that Malpher cruelly treated her animals by forcing them to endure living conditions that were "abominable and extremely unhealthy" is entirely supported by the record.

■ [¶ 17] Malpher's second argument on appeal is that section 1021 is void for vagueness because it does not define the term "cruelly treated." We disagree.

■ [¶ 18] We review the constitutionality of a statute de novo, beginning with the presumption of the statute's constitutionality. *Guardianship of K–M*, 2005 ME 8, ¶ 17, 866 A.2d 106, 112. We have stated that a statute may be unconstitutionally vague when "people of common intelligence must guess at its meaning." *State v. Witham*, 2005 ME 79, ¶ 7, 876 A.2d 40, 42. Additionally, "[i]n light of the fundamental precept that we will, if possible, construe statutes so as to avoid a danger of unconstitutionality, ... legislation should not be held invalid on the ground of uncertainty if susceptible of any reasonable construction that will support it." *Id.* (quotation marks and alteration omitted).

[¶ 19] People of common intelligence need not guess that "cruelly treated," in the context of a statute regulating the treatment of animals, refers to treatment that causes suffering or pain. Additionally, 17 M.R.S. § 1031, which is within the confines of the animal welfare provisions, includes deprivation of necessary medical attention or humanely clean conditions as treatment that amounts to cruelty to animals. We therefore conclude that section 1021(5–A) is not void for vagueness.

The entry is:

Judgment affirmed.