2002 ME 102

**ACADIA MOTORS, INC. et al.[1]**

v.

**FORD MOTOR COMPANY.**

Supreme Judicial Court of Maine.

Argued: March 6, 2002.

Decided: June 25, 2002.

1. The Plaintiffs in this case include the following: Acadia Motors, Inc., Arundel Ford, Auburn Motor Sales, Bailey Brothers, Inc., Blueberry Ford, Inc., Bob Chambers Ford, Brunswick Coastal Ford, Caribou Ford Mercury, Inc., Casco Bay Ford, Clair Ford Lincoln Mercury, Inc., Cole Whitney Ford, D & H Motors, Dave Gould Ford, Farmington Ford, Inc., Freeman Motor Co., Friend Motor Sales, Kallis Ford Chrysler, Inc., Martin Ford, Inc., Millinocket Ford Mercury, Inc., Morang Robinson Automobile Co., KMZ, Inc., Norman–David Lincoln Mercury, Prouty Ford, Inc., Pullen Ford, Inc., Ripley & Fletcher, Rockland Ford Lincoln Mercury, Rowe Ford Sales, Searway Ford Sales, Inc., Starkey Ford, Inc., Van Syckle Lincoln Mercury, Weeks Waltz Motors, Inc., Whited Ford Mazda, Wiscasset Ford, Inc., Yankee Ford, Inc., and York's of Houlton.

Bruce C. Gerrity, Esq. (orally), Roy Pierce, Esq., Preti, Flaherty, Beliveau & Pachios, Portland, for the plaintiffs.

James T. Kilbreth, Esq. (orally), Daniel L. Rosenthal, Esq., Verrill & Dana, Portland, for the defendant.

Panel: CLIFFORD, and RUDMAN, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] The plaintiffs, Maine automobile dealers (Dealers) who sell motor vehicles manufactured by the Ford Motor Company, appeal from a summary judgment entered in the Superior Court (Penobscot County, *Marsano, J.*) in favor of Ford on the Dealers' claim that Ford's "warranty parity surcharge" violates 10 M.R.S.A. § 1176 (1997 & Supp.2001). The Dealers contend that the court erred by finding, as a matter of law, that the surcharge does not violate section 1176. We affirm the summary judgment.

[¶ 2] The facts presented in the parties' statements of material fact and the procedural history of the present dispute may be summarized as follows: Under the sales and service agreements that govern the relationship between Ford and the Dealers, the Dealers are required to repair Ford vehicles under warranty from Ford at no cost to the customer. Ford's customary and nationwide practice is to reimburse the Dealers for these repairs at the rate of cost plus a thirty to forty percent markup. This amount is lower than Ford's suggested retail price for repair work of sixty three percent, and it is lower than the customary retail price that the Dealers charge to nonwarranty customers. These reimbursements are credited to the Dealers on their monthly Parts Statement.

[¶ 3] Since 1980, 10 M.R.S.A. § 1176 has required that a motor vehicle franchisor who "requires or permits a motor vehicle franchisee to perform labor or provide parts in satisfaction of a warranty created by the franchisor" compensate the franchisee for parts and labor on the warranty service "at the retail rate customarily charged by that franchisee" for parts and labor provided to customers not covered by a warranty. *Id.* § 1176. Prior to 1980, section 1176 required only that franchisors "adequately and fairly compensate" franchisees for parts and labor provided in a warranty service. 10 M.R.S.A. § 1176 (Supp.1978–1979) *repealed by* P.L. 1979, ch. 698, § 1 (effective July 3, 1980). The Legislature made these amendments to alleviate the need for dealers to artificially inflate the labor rate they charge non-warranty customers to subsidize manufacturers who are "unwilling to pay the fair and full price for repairs made necessary when their automobiles fail[ ] to meet warranty standards." L.D. 1878, Statement of Fact (109th Legis.1980).

[¶ 4] Ford did nothing to change how it reimbursed dealers until after several small claims were filed against it in Maine District Court for reimbursement by Darling's Bangor Ford.[2] *Acadia Motors, Inc. v. Ford Motor Co.,* 44 F.3d 1050, 1052 (1st Cir.1995).[3] In 1993, Ford did increase its reimbursement and announced that it would be imposing a warranty parity surcharge on all Ford dealers in Maine to recover the costs of reimbursing the Dealers at a higher markup on warranty repairs. *Id.* The 1993 surcharge was $160.00, and it was imposed on all cars and light trucks under 10,000 pounds "reported sold."[4] The surcharge was charged on the Dealers' monthly parts statement.

---

2. *See* 14 M.R.S.A. §§ 7481–7487 (Supp.2001).

3. The small claims were dismissed because Darling's submissions to prove its claims were inadequate. *Id.*

4. For parts and labor provided under a war-

[¶ 5] In 1993, the Dealers sued Ford in the United States District Court claiming that the surcharge was unlawful under section 1176. *Id.* at 1053. The United States District Court found that Ford was entitled to recover its "increased costs of doing business in Maine as a result of th[e] legislation" but that it could only do so by increasing the wholesale sticker price of the vehicles it sold, not by imposing a surcharge on the Dealers' monthly parts statements. *Acadia Motors, Inc. v. Ford Motor Co.*, 844 F.Supp. 819, 829–30 (D.Me. 1994). The United States Court of Appeals for the First Circuit affirmed that portion of the District Court's opinion finding that section 1176 does not prohibit Ford from recovering its costs of compliance, but it vacated that portion of the opinion requiring Ford to do so only by raising the wholesale sticker price of the vehicles it sells to Maine dealers. *Acadia Motors, Inc.*, 44 F.3d at 1056–57. It concluded that nothing in the language of the statute or in the legislative history indicated any legislative intent to "prevent or condition manufacturers' cost recovery." *Id.* at 1056. Ford did not immediately reimpose the 1993 surcharge following the First Circuit Court's decision.

[¶ 6] In 1995, Darling's Bangor Ford filed a complaint in the Superior Court claiming that Ford's reimbursement policies did not meet the requirements of section 1176 because the policies did not pro-vide reimbursement for parts and labor utilized for warranty repairs at the same rate customarily charged by dealers to nonwarranty retail customers. *See Darling's v. Ford Motor Co.*, 1998 ME 232, ¶ 3, 719 A.2d 111 (answering certified questions presented by United States District Court). The parties ultimately settled the dispute.

[¶ 7] In 1999, Ford informed the Dealers that it would again impose a warranty parity surcharge of $150 for each vehicle sold or leased to recover the costs of compliance with section 1176 and the costs of the settlement it incurred in the Darling lawsuit. Ford expressly reserved the right to review and revise the amount of the surcharge and is expected to increase the surcharge to $250 "[v]ery shortly."[5]

[¶ 8] On August 10, 1999, the Dealers filed the complaint in this case seeking a declaratory judgment that the surcharge violates section 1176. Ford moved for a summary judgment, and, after a hearing, the Superior Court entered a partial summary judgment concluding that the surcharge did not violate section 1176[6] but that there remained a genuine issue of material fact regarding whether the Dealers had properly submitted their reimbursement claims. The parties subsequently stipulated to a dismissal of the latter issue, and the Dealers filed this ap-

---

ranty for motor vehicles over 10,000 pounds gross vehicle weight rating, section 1176 requires only that franchisors "adequately and fairly compensate" franchisees. 10 M.R.S.A. § 1176.

5. The Dealers claim, and Ford does not dispute, that the amount of the surcharge had increased to more than $250 by the time this case was heard on appeal.

6. The Superior Court based its decision in part on its finding that the Dealers were collaterally estopped from raising the issue be-cause they had already litigated the same issue before the United States Court of Appeals for the First Circuit in *Acadia Motors, Inc. v. Ford Motor Co.*, 44 F.3d 1050 (1st Cir.1995). In *Acadia Motors, Inc.*, the court upheld the legality of a $160 surcharge that Ford had imposed in 1993 to recover its costs of complying with section 1176. *Id.* at 1056. We need not decide whether collateral estoppel prevents the Dealers from relitigating the issue, however, because we find, on the merits, that section 1176 does not prohibit Ford from imposing the present surcharge.

peal from the entry of the summary judgment.

[¶ 9] The Dealers contend that Ford's 1999 surcharge is an attempt to avoid the costs of complying with section 1176 and that it is against "clear State policy." They maintain that the legislative history of section 1176 demonstrates that the purpose of the statute is to protect the public from the warranty reimbursement practices of motor vehicle manufacturers by protecting local dealers who, because of their inferior bargaining position, are forced to accept sales and service agreements that require them to provide parts and services for warranty work at a rate that is lower than the rate they customarily charge. The public is harmed, they contend, because the dealers are pressured to artificially inflate the rates they charge nonwarranty customers to compensate for the lower rates they receive for the warranty work. The Dealers contend that summary judgment should have been entered in *their* favor.

> We review a summary judgment for errors of law, viewing the evidence in the light most favorable to the party against whom the judgment was entered. A summary judgment is proper if, on the evidence, there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.

*Coulombe v. Salvation Army*, 2002 ME 25, ¶ 8, 790 A.2d 593 (quotations and citations omitted).

[¶ 10] Our main objective in construing statutes is to discern and give effect to the Legislature's intent. *Great Northern Paper, Inc. v. Penobscot Nation*, 2001 ME 68, ¶ 15, 770 A.2d 574. "To give effect to the Legislature's intent, we look first to the statute's plain meaning and, if there is ambiguity, we look beyond that language to the legislative history to determine the intent of the Legislature." *Id.*

[¶ 11] Section 1176 requires that a franchisor (manufacturer)

> reimburse the franchisee for any parts so provided at the retail rate customarily charged by that franchisee for the same parts when not provided in satisfaction of a warranty. Further, the franchisor shall reimburse the franchisee for any labor so performed at the retail rate customarily charged by that franchisee for the same labor when not performed in satisfaction of a warranty
> . . . .

10 M.R.S.A. § 1176. The statute is unambiguous, and it is silent with respect to Ford's ability to impose a surcharge. As the Court of Appeals for the First Circuit concluded in upholding the legality of a similar surcharge in *Acadia Motors, Inc. v. Ford Motor Co.*, 44 F.3d at 1056, section 1176 contains no language restricting or conditioning Ford's ability to recover its costs of compliance.

> The statute says nothing about wholesale or retail prices, and apparently leaves the manufacturer free to increase wholesale prices, and the dealer to increase retail prices. The legislative history of the amended statute also does not indicate that the Maine legislature intended to set price controls or to force manufacturers to wholly bear the costs of compliance.

*Id.* We agree with the First Circuit that the language of section 1176 is clear and that it does not prohibit the surcharge on its dealers imposed by Ford.

The entry is:

Judgment affirmed.