STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
BUSINESS AND CONSUMER COURT
LOCATION: PORTLAND
DOCKET NO. BCD-AP-17-05 ✓

DARLING'S BANGOR FORD )
)
    Appellee/ Cross-Appellant, )
)
v. )
)
FORD MOTOR COMPANY, )
)
    Appellant/ Cross-Appellee. )

**ORDER ON APPEAL**

This matter comes before the Court on appeal of a small claims judgment (the "Judgment") entered by the Bangor District Court (*Budd, J.*) in Docket No. SC-17-228 (July 14, 2017). Both parties appeal certain aspects of the Judgment. The Court heard oral argument on the appeal on January 24, 2018. Michelle Schaffer, Esq. appeared *pro hac vice* for Appellant/ Cross-Appellee Ford Motor Company ("Ford") and Judy Metcalf, Esq. appeared for Appellee/ Cross-Appellant Darling's Bangor Ford ("Darling's").

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The District Court found the following facts, which are uncontested:

Ford is a motor vehicle manufacturer and franchisor. (Judgment 1.) Darling's is a motor vehicle dealer and a franchisee of Ford. (*Id.*) This dispute arises out of Darling's submission of a claim to Ford seeking reimbursement for 61 days of administrative labor associated with storage of a 2013 Ford F-150 pickup truck (the "Truck") pending a recall repair between May 31, 2016 and July 31, 2016, and Ford's refusal to reimburse this claim. (*Id.*)

On April 30, 2016, Darling's acquired the Truck as a trade-in as part of a customer's

---

[*] The five-page Judgment did not include page numbers. The Court refers to pages by number in accordance with their sequence as entered.

1

purchase of a new vehicle. (*Id.* 2.) On May 24, 2016, Ford issued a safety recall and notified Darling's through an Advance Notice of Safety Recall 16S24 (the "Recall" or "Recall 16S24") (Pl's Ex. 5[1]). (*Id.*) The Recall related to a seal in the brake master cylinder which could become compromised and allow brake fluid to leak. (*Id.*) The Advance Notice of Recall stated that Ford did not have sufficient quantities of the parts necessary to repair all vehicles subject to the Recall and did not expect to have the needed quantity of parts until "late third quarter 2016." (*Id.*) The Advance Notice included language in bold typeface informing dealers that "Federal law" required them to complete the Recall service before delivery of new vehicles. (*Id.*) The Advance Notice informed vehicle owners that the Recall must still be performed even if the owner had paid for a previous repair. (*Id.*) The Advance Notice was apparently responsive to a National Highway Traffic Safety Administration ("NHTSA") "Safety Recall Report" (Pl's Ex. 6) dated May 23, 2016, that detailed the class of affected vehicles, the possible defect, and the number of potentially affected vehicles. (*Id.*)

Darling's submitted a claim to Ford (Pl's Ex. 9), seeking reimbursement for 61 days of administrative labor associated with storage between May 31, 2016 and July 31, 2016, during which the Truck could not be repaired because Ford had not yet supplied Darling's with the necessary replacement parts. Although the vehicle remained available for sale during this period, the safety recall and the resulting downgrade of the Truck's status had the practical effect of rendering the vehicle unable to be sold until it could be repaired. (Judgment 3.) The repair was made on or about October 4, 2016. (*Id.* 2.) The Truck was sold December 9, 2016. (*Id.*) (*See* Pl's Ex. 19.)

On October 6, 2016, Ford sent Darling's a letter (Pl's Ex. 16), declining to reimburse the

---

[1] Exhibit numbers are consistent with those used at trial.

2

claim "for vehicle storage related to dealership-owned used vehicles for which there is neither a legal impediment nor Ford Motor Company directive limiting resale." (Judgment 3.) Ford characterized Darling's actions during the 61-day period as a "unilateral decision" by Darling's to hold the vehicles that were awaiting delivery of the needed parts. (*Id.*)

The assertion in Ford's letter of October 6, 2016 that Darling's had unilaterally decided to hold the vehicles was refuted by the evidence at hearing. (*Id.* 3-4.) As a result of the recall, Ford revoked the Truck's "certified pre-owned" designation, which diminished the Truck's marketability. (*Id.* 2-3.) Ford's witness, Patrick Curtin, acknowledged that there is no evidence that Darling's withheld the vehicle from sale or turned away any potential buyers of the Truck. (*Id.* 3-4.) Mr. Curtin also acknowledged that Darling's had an obligation to disclose the manufacturer's recall to a prospective buyer, which put Darling's in the position of finding a buyer who was willing to pay for a car that was defective as declared by the NHTSA. (*Id.* 3.)

The District Court entered judgment for Darling's and ordered Ford to reimburse Darling's $1,830 for the administrative labor costs it incurred over the 61-day period. (*Id.* 4.) Citing M.R.S.C.P. 1, the District Court declined to award Darling's its costs and attorney fees and ordered each party to pay its own legal fees. (*Id.* 4-5.) The District Court entered its judgment on July 14, 2017. Ford filed its notice of appeal to the Superior Court on August 11, 2017; Darling's filed its notice of cross-appeal on August 21, 2017. This Court accepted the appeal for transfer to the Business and Consumer Court on October 2, 2017.

## STANDARD OF REVIEW

When a jury trial has not been requested, the Superior Court's review of a small-claims judgment rendered by the district court is limited to questions of law only. M.R.S.C.P. 11(d); *Taylor v. Walker*, 2017 ME 218, ¶ 6, 173 A.3d 539. Issues of fact may not be retried unless the

3

appellant has requested a jury trial *de novo*. M.R.S.C.P. 11(d); *Taylor*, 2017 ME 218, ¶ 5, 173 A.3d 539. In this case, neither Ford as appellant nor Darling's as cross-appellant has requested a jury trial. Accordingly, appellate review is limited to matters of law. M.R.S.C.P. 11(d).

## DISCUSSION

### 1.  FORD'S APPEAL

Ford claims that the District Court erred as a matter of law in that its judgment fails to account for the "express limitations" of 10 M.R.S. § 1176 and ignores the parties' contractual agreement. (Ford's Br. 12-16.·) A threshold inquiry, however, is whether Ford is foreclosed from raising these issues now, or whether it is bound by the reason it gave in its initial denial of Darling's request for reimbursement in Ford's letter of October 6, 2016. (Darling's Opp'n 3-4, 11-13·)

Under 11 M.R.S.A. § 1176, "All claims must be either approved or disapproved within 60 days of their receipt . . . . When a claim is disapproved, the franchisee that submitted the claim must be notified in writing of the claim's disapproval within that period, together with the specific reasons for its disapproval." Darling's takes the position that under this provision of section 1176, Ford's October 6, 2016 written reason for disapproval is the only reason that may be considered by the District Court and by this Court on appeal. (Darling's Opp'n 12.)

The Superior Court (Penobscot County, *Mills, J.*) has held that the result of a franchisor's failure to respond to a claim in writing within the statutorily prescribed period is that the claim is deemed approved. *Nissan Motor Corp. U.S.A. v. Darling's Honda/ Nissan*, No. CV-94-118, CV-97-218, 1999 Me. Super. LEXIS 190, *5-6 (July 7, 1999). *See also Darling's Hyundai v. Hyundai Motor Corp.*, Nos. SC-15-176, SC-15-183 at 4 (Me. Dist. Ct., Augusta, June 11, 2015) (applying

---

> References to Ford's Brief are to the "Brief of Defendant-Appellant Ford Motor Company," undated in the original and filed electronically on October 27, 2017.

· References to Darling's Opposition are to "Plaintiff/Appellee's Brief in Opposition to Defendant/Appellant's Brief on Appeal," dated November 29, 2017.

4

same rule where franchisor failed to disapprove franchisee's claim in writing until two years after the claim was submitted). The issue here is different from that presented to the courts in *Nissan Motor Corp U.S.A.* and *Darling's Hyundai*. Here, Ford did notify Darling's in writing that its claim was disapproved within the statutory period. The notification included a reason for the denial, as required by § 1176:

> [W]e decline to reimburse the amounts submitted for vehicle storage related to dealership-owned used vehicles for which there is neither a legal impediment nor Ford Motor Company directive limiting resale. While you have noted that the vehicles in question are subject to recalls, the National Highway Safety Transportation Association has not required that they be withheld from resale. Your unilateral decision to hold the vehicles does not obligate Ford Motor Company to compensate you for any associated costs. (Pl's Ex. 16.)

Darling's position is premised on the notion that the reasons for disapproval recited in this notice are inconsistent with Ford's position on appeal. The Court disagrees with this premise. In the notice, Ford states that the reason it is declining to reimburse Darling's is because there is no legal impediment or Ford Motor Company directive limiting resale. This is the same argument that Ford made at the small claims hearing and the same argument it makes to this Court on appeal. Although Ford does not explicitly cite section 1176 in its reason for disapproving the claim, in context it is clear that Ford intended this correspondence to be its notice of disapproval under the statute. That Ford is taking the position that the request for reimbursement is not allowed under section 1176 is implicit in the very sending of the letter.

However, Ford goes on to accuse Darling's of making the "unilateral decision to hold [the Truck]." Darling's disproved this assertion at the small claims hearing to the satisfaction of the District Court. (Judgment 4.) This undercuts, but does not defeat, Ford's argument on appeal. Ford argues that administrative labor costs associated with the storage of dealer-owned, saleable vehicles pending Ford's provision of required parts to repair a recall condition are not reimbursable

5

under section 1176; this is a legal argument, not a factual assertion, and was raised implicitly in the first instance by Ford in its notice to Darling's disapproving its claim for reimbursement. (*Id.* 3.) Even if the Court were to agree with Darling's that Ford is limited to the written reason for disapproval in its October 6, 2016 letter to Darling's, Ford would not be foreclosed from raising the arguments now presented to this Court on appeal.

## 1. The District Court Judgment Properly Construed Section 1176

Ford argues that the District Court erred in finding the cost of administrative labor reimbursable under 10 M.R.S.A. § 1176 because it was not "labor . . . in satisfaction of a warranty created by the franchisor." (Ford's Br. 12.) Ford argues that this provision of section 1176 means that "the warranty itself . . . controls the scope of work performed [and] the scope of permissible reimbursement . . . . [and] no . . . authorization [for administrative labor costs associated with vehicle storage] exists in any warranty created by Ford under this recall." (*Id.*) Darling's responds that the Maine Motor Vehicle Franchise Act ("MMVFA") supersedes the warranty and that the purpose of the MMVFA can only be served by requiring Ford to reimburse Darling's for its administrative labor. (Darling's Opp'n 13-16.)

The relevant section of 10 M.R.S.A. § 1176 provides that:

> If a motor vehicle franchisor requires or permits a motor vehicle franchisee to perform labor or provide parts in satisfaction of a warranty[1] created by the franchisor, the franchisor shall properly and promptly fulfill its warranty obligation . . . . Further, the franchisor shall reimburse the franchisee for any labor so performed at the retail rate customarily charged by that franchisee for the same labor when not performed in satisfaction of a warranty; as long as the franchisee's rate for the labor not performed in satisfaction of the warranty is routinely posted in a place conspicuous to its service customer.

---

[1] The trial court confirmed that there is no question as to whether the recall work performed on the Truck was "in satisfaction of a warranty created by the franchisor" and that the work was actually performed, finding that Ford reimbursed Darling's for a total of $254.60 for the repair itself. (Judgment 3.)

6

It is not disputed that the court below properly ruled that Darling's met the posting requirements for establishing the "retail rate customarily charged" under section 1176. (Judgment 1-2.) Darling's offered as Exhibit 1 a photocopy of a document labeled "Notice to Customers Required Under Maine State Law," which informed customers that "Administrative labor charges of .35 hrs, maximum of $30.00 per day, apply to vehicles left after repairs are complete or you are told repairs cannot be made." (*Id.* 1.) Mr. Darling testified that Trial Exhibit 1 is posted in "the most conspicuous place," Darling's service drive. (*Id.*) The District Court thus found that Darling's satisfied the posting requirement of section 1176.

The District Court also considered Ford's exhibits and testimony regarding the contract(s) between itself and Darling's, specifically addressing Ford's "Warranty and Policy Manual," the relevant portions of which were submitted as Defendant's Exhibit 1, and the testimony of Patrick Curtin, Ford's warranty policy finance manager. The Court found that the Warranty and Policy Manual does not prohibit the sale of used vehicles under recall and that in the case of this recall, the notice provided to Darling's "did not proactively or affirmatively identify reimbursement for administrative labor relating to vehicle storage." (Judgment 4 (quotations omitted).) In this context, it is clear that the District Court was considering these materials in order to determine if they could assist in resolving the "crux of [the] dispute . . . whether a used vehicle subject to a safety recall that is nevertheless available for sale anyway can be said to be the subject of administrative labor costs . . . [associated with] on site storage." (*Id.* 3 (quotation marks omitted).) The Court found the Warranty and Policy Manual generally excludes reimbursement for consequential damages and allows reimbursement for "storage and associated labor incurred in connection with a particular recall [only] in exceptional circumstances." (*Id.* 4 (quotations omitted).)

However, the District Court properly determined that the Warranty and Policy Manual

cannot be dispositive on the issue of whether Darling's was entitled to reimbursement for the administrative labor costs associated with the storage of the Truck. Instead, the District Court asked rhetorically "what options are available to a dealer who has unwittingly come into possession of a used vehicle that subsequently becomes subject to a recall notice . . . [and as a result] the vehicle [is] unavailable for sale as a practical, rather than literal, matter." (*Id.* 3.) This next level of inquiry is precisely what is required under the Maine Motor Vehicle Franchise Act. The District Court undertook this inquiry to determine whether the administrative labor charges here were in satisfaction of a warranty created by the franchisor.* The trial court concluded as a factual matter that Darling's did nothing to inhibit a potential sale in a way that could be fairly characterized as a "unilateral" decision. (*Id.* 4.) Rather, the District Court found that "[a]s a practical matter, Darling's had no option other than to keep the vehicle on its lot while awaiting delivery of the parts required under the recall." (*Id.*)

This inquiry reveals that the District Court properly construed section 1176. The statute's reference to "labor . . . in satisfaction of a warranty created by franchisor" is properly understood as a threshold requirement for reimbursement. *See Darling's v. Ford*, AP-99-58 at 2 (Me. Super. Ct., Pen. Cty., Oct. 2, 2000) (franchisee's burden under section 1176 to prove that "claim for reimbursement is based on warranty work"). Here, Darling's proved to the satisfaction of the District Court that the administrative labor costs it incurred were in satisfaction of Ford's warranty because Darling's was unable to sell the vehicle pending Ford's provision of the parts required to perform the warranty repair. This formed the necessary factual predicate for the legal

---

* The trial court's determination that administrative labor associated with vehicle storage pending manufacturer-supplied warranty parts is a reimbursable category of labor costs is consistent with how those costs have been treated by Maine's district courts. *See, e.g., Darling's Bangor Ford v. Ford Motor Co.*, No. SC-11-798,799 (Me. Dist. Ct., Bangor, April 5, 2012); *Darling's Bangor Ford v. Ford Motor Co.*, No. SC-17-88 at 2 (Me. Dist. Ct., Bangor, April 20, 2017).

8

determination that Darling's labor costs associated with storing the vehicle were therefore reimbursable as labor costs incurred in satisfaction of the Ford-created warranty. The District Court did not err in its application of section 1176 to the facts presented at the small claims hearing.[7]

## 2. The District Court Judgment Properly Considered The Relevant Provisions of The Contract Between the Parties

Ford argues that because nothing in the Advance Notice of Recall "required or authorized administrative labor or vehicle storage," and the Warranty and Policy Manual[8] "expressly states that storage fees are consequential expenses and generally not reimbursable[,]" that the court below improperly failed to honor Ford's and Darling's duties and obligations pursuant to their respective contractual commitments. (Ford's Br. 13, 16.) Darling's responds that to the extent it is appropriate to consider any contract documents offered by Ford, Maine law supersedes any of the duties and obligations imposed by the contracts between the parties. (Darling's Opp'n 13.)

The argument addressed in Part I.A. of this Order, *supra*, is a matter of statutory construction: interpreting the meaning of the phrase "in satisfaction of a warranty created by the franchisor." Here, Ford is proceeding from the premise that the administrative labor for which Darling's seeks reimbursement is not "in satisfaction of a warranty created by the franchisor" because Darling's can only be reimbursed for labor costs that Ford expressly authorizes in its

---

[7] Although not cited by the court below, on appeal, Darling's draws the Court's attention to another provision of section 1176, which provides that "[a] franchisor may not by agreement, by restriction upon reimbursement, or otherwise, restrict the nature or extent of labor performed . . . so that such restriction impairs the franchisee's ability to satisfy a warranty created by the franchisor . . . ." (Darling's Opp. 18.) Ford claims that the Warranty and Policy Manual disallows payments for labor costs associated with storage pending a franchisor-created warranty repair; to the extent that this is true, the Warranty and Policy Manual violates this provision of section 1176 under the facts found by the District Court. *See* 10 M.R.S. § 1182.

[8] Ford characterizes the Warranty and Policy Manual as "represent[ing] the underlying contract that speaks to Ford's reimbursement policies for warranty claims." (Ford's Br. 16.) Darling's labels the Warranty and Policy Manual and other documents referenced by Ford as "Ford's contracts." (Darling's Opp. 13, 15.) This Court thus assumes without deciding that the documents Ford refers to memorialize a contractual relationship between Ford and Darling's, an assumption implicit in the Judgment. (*See, e.g.*, Judgment 4.)

9

contract documents.

Ford is thus proceeding from a faulty premise. If Darling's is entitled to reimbursement for its administrative labor costs under section 1176—which the trial court ruled below, and this Court affirms in Part I.A. of this Order, *supra*—then it does not matter whether Ford's contract documents expressly disallow reimbursement for the labor costs. *See* 10 M.R.S. § 1182 ("Any contract or part thereof or practice thereunder in violation of any provision of this chapter shall be deemed against public policy and shall be void and unenforceable."). The case law is rife with explanations of the Maine Motor Vehicle Franchise Act's purpose: to level the playing field between manufacturers and dealers. *See, e.g., Acadia Motors, Inc. v. Ford Motor Co.*, 2002 ME 102, ¶ 3, 799 A.2d 1228; *Darling's v. Ford Motor Co.*, 1998 ME 232, ¶¶ 10-11, 719 A.2d 111; *see also FCA US, LLC v. Dunlap*, BCD-AP-15-03 at 19 (Bus. & Consumer Ct. June 27, 2016, *Murphy, J.*). Allowing Ford's contract documents to dictate that certain categories of labor costs are non-reimbursable, notwithstanding a judicial determination that those labor costs were incurred in satisfaction of a Ford-created warranty, would frustrate this legislative purpose. The dispositive issue is whether Darling's reimbursement claim for administrative labor associated with storing the Truck is for labor performed in satisfaction of a warranty created by Ford. Because the trial court so ruled and this Court affirms that judgment, the MMVFA controls, and Ford must reimburse Darling's notwithstanding any contrary provisions in Ford's contract documents.

### 3. Conclusion

Based on the foregoing the Court AFFIRMS the judgment of the District Court ordering Ford to reimburse Darling's $1,830 for its administrative labor costs.

## II. DARLING'S CROSS APPEAL

Although the District Court ruled in favor of Darling's and ordered Ford to reimburse

10

Darling's for the administrative labor charges it incurred while storing the Truck pending Ford's delivery of the parts necessary to complete the warranty repair, the District Court nonetheless denied Darling's request for attorney fees and ordered each party to pay its own legal fees. (Judgment 4.) The District Court based its decision on the good-faith nature of the dispute and, "of greater significance," M.R.S.C.P. 1, which explains that the purpose of small claims court is "to secure the just, speedy and inexpensive determination of every action in a simple and informal way." (*Id.*) The District Court noted that "the efficiencies anticipated by the rule" did not occur in this case given the amount of time required for hearing, the various exhibits offered and admitted, and the "very skilled lawyers on both sides." (*Id.*)

In its cross-appeal, Darling's argues that this was legal error because the District Court was required to award Darling's its fees pursuant to 10 M.R.S. § 1176. (Darling's Cross Br. 6.[*]) Ford responds that because the District Court "made clear that its Judgment was outside the express scope of" section 1176 that the District Court therefore reached its decision not under the statute, but pursuant to M.R.S.C.P. 3(c), which grants the small claims court the authority "to do substantial justice." (Ford's Cross Opp'n 4-5.[**]) Ford argues that the fee-shifting provision of section 1176 therefore does not apply. (*Id.*)

A court's authority to award attorney fees may be determined by statute. *Linscott v. Foy*, 1998 ME 206, ¶ 16, 716 A.2d 1017. Section 1176 mandates an award of attorney fees to a dealer who prevails in a legal action to recover reimbursement for a claim disapproved by a manufacturer. The statute states as follows:

> In any warranty claim that is disapproved by the manufacturer, and the dealer brings
> legal action to collect the disapproved claim and is successful in the action, the

[*] References to "Darling's Cross Brief" are to Darling's "Plaintiff/Cross-Appellee Brief" dated October 27, 2017.
[**] References to "Ford's Cross Opposition" are to the "Brief of Defendant-Appellant-Cross-Appellee Ford Motor Company on Plaintiff-Cross-Appellant's Cross Appeal" dated November 29, 2017.

11

court *shall award* the dealer the cost of the action together with reasonable attorney fees. Reasonable attorney fees shall be determined by the value of the time reasonably expended by the attorney and not by the amount of the recovery on behalf of the dealer. (Emphasis added.)

The Court disagrees with Ford that the District Court did not resolve this matter under section 1176. *See* Part I of this Order, *supra*. Ford disapproved Darling's claim for reimbursement of administrative labor associated with vehicle storage; Darling's thereafter brought a legal action to collect the disapproved claim; Darling's was successful in this action because the District Court ordered Ford to reimburse Darling's the cost of that administrative labor. (Judgment 4.) Thus, by its plain language, section 1176 required the District Court to award Darling's its attorney fees.

The Court appreciates the District Court's reasoning and would readily recommend that this Court affirm the court's decision if it had acted within its discretion. But the Legislature has decided to make the determination of whether to award attorney fees to a prevailing dealer under section 1176 non-discretionary, and that decision must be respected. *See Town of Freeport v. Ocean Farms*, 633 A.2d 396, 399 (Me. 1993). To the extent that the award in this case is inconsistent with the general principles of M.R.S.C.P. 1, the specific mandate of section 1176 must prevail over those generalities. *See Fleet Nat'l Bank v. Liberty*, 2004 ME 36, ¶ 10, 845 A.2d 1183.

This Court thus agrees with Darling's that the District Court erred as a matter of law when it declined to award Darling's its attorney fees despite ruling that Darling's had succeeded in its legal action to collect a disapproved claim under section 1176. The Court therefore REVERSES that aspect of the small claims judgment that declined to award Darling's its reasonable attorney fees.

In its written brief, Darling's requested that this Court remand the matter to the District Court for an award of attorney fees; however, at oral argument, counsel for Darling's suggested that this Court could award attorney fees on appeal by affidavit. Our Law Court has held that the

12

reasonable amount of attorney fees is a factual determination that must be made in the first instance by the trial court. *Advanced Constr. Corp. v. Pilecki*, 2006 ME 84, ¶ 35, 901 A.2d 189. Because this Court is acting in an appellate capacity in this matter and is foreclosed from making factual determinations, the award of attorney fees must be made in the first instance by the District Court. M.R.S.C.P. 11(d); *Taylor*, 2017 ME 218, ¶ 6, 173 A.3d 539. This matter is thus hereby REMANDED to the District Court to award Darling's its reasonable attorney fees.

## CONCLUSION

Based on the foregoing, it is hereby ORDERED:

That the judgment of the District Court is AFFIRMED IN PART and REVERSED IN PART as follows:

1. The Judgment of the District Court ordering Ford to reimburse Darling's $1,830 for its administrative labor costs is AFFIRMED.

2. The Judgment of the District Court denying Darling's request for attorney fees and ordering each party to pay its own fees is REVERSED. This matter is REMANDED to the District Court with instructions to award Darling's its reasonable attorney fees.

The Clerk is instructed to enter this Order on the docket for this case incorporating it by reference pursuant to Maine Rule of Civil Procedure 79(a).

5/11/18

**DATE**

**SUPERIOR COURT JUSTICE**
**BUSINESS AND CONSUMER COURT**

13

Darling's Bangor Ford                              **BCD-AP-17-05**

  v.

Ford Motor Company


### Plaintiff

Darling's Bangor Ford      Judy Metcalf, Esq.
                PO Box 9
                Brunswick, ME 04011


### Defendants

Ford Motor Company      James Campbell, Esq.
                One Constitution Center
                Boston, MA 02129